William **LUCASH**

v.

**STRICK CORPORATION Amended and Restated Strick Corporation Hourly Rated Pension Plan, First Pennsylvania Bank, Pension Benefit Guaranty Corporation, and International Union of United Automobile, Aerospace and Agricultural Implement Workers of America (UAW), Local No. 1354.**

Civ. A. No. 83–4568.

United States District Court,
E.D. Pennsylvania.

June 1, 1984.

Michael R. Needle, Philadelphia, Pa., for plaintiff.

Frank C. Sabatino, Philadelphia, Pa., for defendants.

## MEMORANDUM OF DECISION

McGLYNN, District Judge.

Plaintiff, William Lucash, an hourly employee at defendant Strick Corporation, (Strick), from August 1958 through May 16, 1975 brought this action against Strick, Amended and Restated Strick Corporation Hourly Rated Pension Plan, (the Pension Plan), the Pension Benefit Guaranty Corporation[1], (PBGC), First Pennsylvania Bank, N.A.[2], and UAW Local No. 1354 (Local 1354), to recover benefits allegedly due him under the Pension Plan. The Complaint seeks relief under three theories.

Count One of the three count Complaint alleges that the defendants violated plaintiff's right under the Employee Retirement Income Security Act, (ERISA), 29 U.S.C. § 1001, et seq., by (1) depriving him of disability benefits he fully deserved and (2) by failing to inform him of the reasons for the denial and the steps he could have taken to perfect his application. Count Two alleges a violation of § 301 of the Labor Management Relations Act, (LMRA), 29 U.S.C. § 185. Specifically, it is contended that the defendants' actions in depriving plaintiff of his disability benefits violated a succession of collective bargaining agreements. Count Three alleges a state law claim of knowing, intentional or reckless breach of the duty of care, fiduciary duty and/or contractual obligation owed by the defendants to the plaintiff.

Presently pending before the court is Strick's and the Pension Plan's motion for summary judgment, Fed.R.Civ.P. 56, on Counts One and Two of the Complaint and their motion to dismiss Count Three of the Complaint pursuant to Fed.R.Civ.P. 12(b)(6).

As to Counts One and Two of the Complaint, Fed.R.Civ.P. 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The court, for purposes of determining a summary judgment motion, must view the record in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Smith v. Pittsburgh Gage & Supply Co.*, 464 F.2d 870, 874 (3d Cir.1972). With this principle in mind, the following facts may be gleaned from the pleadings and exhibits submitted to the court.

Pursuant to a series of collective bargaining agreements, Strick and Local 1354, plaintiff's representative in the bargaining unit, created an employee benefit plan which conferred various benefits on Strick employees, including certain pension benefits in the event of permanent and total disability. Strick closed its Fairless Hills plant in May of 1975 and in connection with the plant closing terminated the employee benefit plan. As a result of Strick's termi-

---

1. Upon stipulation of counsel, PBGC was dismissed without prejudice on May 24, 1984.

2. Upon stipulation of counsel, First Pennsylvania Bank, N.A. was dismissed without prejudice on December 5, 1983.

nation of the employee benefit plan a class action, captioned *Mullin v. PBGC,* Civil Action No. 76–950 (E.D.Pa.), was filed charging Strick with violating the collective bargaining agreement when it unilaterally rescinded the employee pension plan. Plaintiff was a member of the *Mullin* class. A consent decree was entered resolving the *Mullin* action in September of 1978, wherein Strick agreed to reinstate and continue the pension plan in exchange for the release of any claims the class members may have had or may have against Strick under the collective bargaining agreement with respect to the pension plan.

During the course of his employment with Strick, plaintiff began to suffer from diseases of the back, heart and digestive system and when plaintiff's employment with Strick was terminated when it closed its Fairless Hills Plant on May 16, 1975, he worked temporarily for two different employers. He was refused permanent employment because of his health. In December of 1976 plaintiff applied to the Social Security Administration, (SSA) for disability benefits. The SSA made a determination that plaintiff was disabled in October of 1975 and, accordingly, awarded him disability benefits retroactive to that date.

In January of 1979 plaintiff applied to Strick for pension benefits under the reinstated pension plan. In support of his application plaintiff submitted the SSA determination that he was disabled as of October 17, 1975. According to § 3.4 of the pension plan, in order to recover, plaintiff must have been suffering from a total and permanent disability which began prior to May 31, 1975. In March of 1979, Strick denied plaintiff's disability benefits application on the grounds that plaintiff failed to submit sufficient medical documentation which demonstrated that he was suffering from a total and permanent disability which began prior to May 31, 1975.

In April of 1979 Local 1354 intervened on plaintiff's behalf and requested a further review of plaintiff's application for disability benefits. Pursuant to that review, plaintiff's doctor, Milton Swartz, M.D., forwarded plaintiff's medical file to Arnold L. Goldstein, M.D. who examined the plaintiff on behalf of Strick in May of 1979 and determined that as of that date plaintiff was unable to be employed. In August of 1979, Strick again denied plaintiff's application for disability benefits because he failed to establish that he was totally and permanently disabled prior to May 31, 1975.

After this second denial, at Local 1354's request, Strick held a hearing on September 4, 1979 where the plaintiff testified that his illnesses had rendered him totally and permanently disabled prior to May 31, 1975. At the hearing Strick requested the plaintiff to have his doctor forward an explanation of plaintiff's physical condition prior to May 31, 1975 to the company. In his response to this request, Strick received a one-line letter from plaintiff's doctor, Milton Swartz, M.D., which stated: "This is to certify that William Lucash has been totally disabled since May 16, 1975".[3] *See* Strick's Summary Judgment Exhibit E at 12.

On September 25, 1979 Strick informed plaintiff that the information it had received was insufficient and requested plaintiff to have his doctor forward a detailed explanation of plaintiff's physical condition prior to May 31, 1975. No such explanation was forthcoming and Strick denied plaintiff's application on December 11, 1979 for failure to substantiate his claim of total and permanent disability prior to May 31, 1975.

On February 13, 1980, Strick received a letter from plaintiff's attorney, Jeffrey Reed, informing Strick that he had proof of plaintiff's total disability and would forward such data upon request. In a response dated February 15, 1980 Strick requested Mr. Reed to forward the informa-

---

**3.** Strick had previously received the same one-line letter from Dr. Swartz indicating plaintiff was disabled as of May 16, 1979.

tion for its consideration. Strick never received this information.

## I.  ERISA CLAIM

■ The standard of review which the court must apply to Strick's and the Pension Plan's decision to deny plaintiff disability benefits is whether the defendants acted in an arbitrary or capricious manner. The court is not free to substitute its own judgment for that of the defendants in determining eligibility for plan benefits. *Rosen v. Hotel and Restaurant Employees & Bartenders Union,* 637 F.2d 592, 596 n. 5 (3d Cir.1981), *cert. denied,* 454 U.S. 898, 102 S.Ct. 398, 70 L.Ed.2d 213 (1981); *Bickel v. Long Term Disability Plan of Western Electric,* 541 F.Supp. 685 (E.D.Pa. 1982). Under this standard the "scope of review is a narrow one. A reviewing court must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Bowman Transportation, Inc. v. Arkansas-Best Freight System, Inc.,* 419 U.S. 281, 285, 95 S.Ct. 438, 441, 42 L.Ed.2d 447 (1974). "Review under this standard requires the challenged decision to remain intact unless it is not rational", *Federal Communications Commission v. National Citizens Committee for Broadcasting,* 436 U.S. 775, 803, 98 S.Ct. 2096, 2116, 56 L.Ed.2d 697 (1978), or "unwarranted in law or without justification in fact." *Goodman v. United States,* 518 F.2d 505, 511 (5th Cir.1975).

■ Application of this standard requires affirmance of defendants' decision to deny plaintiff disability benefits. Defendants' denial was based on plaintiff's repeated failure to offer evidence that he was totally and permanently disabled prior to May 31, 1975.

Section 3.4 of the pension plan requires an applicant to have been suffering from a total and permanent disability prior to May 31, 1975. Total and permanent disability is defined in § 3.5 of the pension plan as follows:

A participant shall be considered totally and permanently disabled hereunder if he is suffering from a physical or mental condition which ... will prevent the employee from performing all of the work pertaining to his former occupation with the company or any other occupation for which he is or may be suited by education, training or experience...

A review of the record leads me to conclude that Strick's and the Pension Plan's decision to deny plaintiff benefits was not arbitrary or capricious. Nothing in the medical reports submitted to the defendants demonstrate that the plaintiff was suffering from a total and permanent disability, as that term is defined in § 3.5 of the pension plan, prior to May 31, 1975. Defendants repeatedly requested the plaintiff or his counsel to provide the necessary medical documentation as to his condition prior to May 31, 1975, in order that they could properly assess plaintiff's eligibility for benefits. When no such explanation was forthcoming, the defendants denied plaintiff's application for benefits. I cannot say that on the record before me such decision was arbitrary or capricious.

In opposition to defendants' motion for summary judgment on the ERISA claim plaintiff also contends that the letter denying his application for benefits violated the procedural requirements of ERISA as set forth in 29 U.S.C. § 1133. I do not agree.

Section 1133 provides:

In accordance with regulations of the secretary, every employee benefit plan shall—

(1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and

(2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

29 U.S.C. § 1133.

■ The record here clearly establishes that the defendants did not violate the pro-

cedural requirements of ERISA. Plaintiff was specifically informed that his application was defective due to the lack of vital medical evidence. Moreover, plaintiff was informed that he could cure the defect by having his doctor submit a detailed explanation of the condition of his health prior to May 31, 1975, and by providing evidence that the determination of the Social Security Administration that plaintiff had been disabled since October 17, 1975 was retroactive to the previous May. *See* Strick Appendix to Summary Judgment Motion at E–13.

Accordingly, the defendants did not violate the procedural requirements of ERISA and Strick's and the Pension Plan's motion for summary judgment on Count One of the Complaint is granted.

## II.  § 301 LMRA CLAIM

In Count Two of his Complaint plaintiff maintains that the defendants' failure to afford him disability benefits under the pension plan was a violation of a collective bargaining agreement and therefore actionable under § 301 of the LMRA. I do not agree.

■ Plaintiff's claim is barred by the res judicata effect of the Consent Decree entered in *Mullin v. PBGC*, Civil Action No. 76–950 (E.D.Pa. filed September 1, 1978). Plaintiff was a member of the *Mullin* class. The terms of the consent decree specifically extinguished all claims that class members may have had or may have against Strick that it breached its collective bargaining agreement with respect to the pension plan. The consent decree, in turn, requires Strick to maintain the pension plan and comply with the requirements of ERISA, which it has.

■ When a consent decree is entered in a class action, the terms of that settlement are binding upon class members. *See Fowler v. Birmingham News Co.*, 608 F.2d 1055 (5th Cir.1979).

Accordingly, Strick's and the Pension Plan's motion for summary judgment of Count Two of the Complaint is granted.

## III.  STATE LAW CLAIM

Plaintiff asserts that defendants' actions in denying his disability benefits was a knowing, intentional and/or reckless breach of the duty of care, fiduciary duty and/or contractual obligations which they owed to him.

Strick and the Pension Plan have filed a motion to dismiss this claim pursuant to Fed.R.Civ.P. 12(b)(6) on the ground that it is preempted by § 514 of ERISA, 19 U.S.C. § 1144. I agree and, accordingly, will grant their motion to dismiss.

A trial court will dismiss a complaint for failure to state a claim upon which relief can be granted when it appears to a certainty that the plaintiff would not be entitled to relief under any set of facts which could be proven in support of his claim. Fed.R.Civ.P. 12(b)(6); *Jenkins v. McKeithen*, 395 U.S. 411, 421–22, 89 S.Ct. 1843, 1848–49, 23 L.Ed.2d 404 (1969); *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Lavin v. Data Systems Analysts, Inc.*, 443 F.Supp. 104, 106 (E.D.Pa. 1977).

Section 514 of ERISA, 29 U.S.C. § 1144, provides in pertinent part:

(a) Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter *relate* to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title. This section shall take effect on January 1, 1975.

\* \* \* \* \* \*

(c) For purposes of this section:
(1) The term "State law" includes all laws, decisions, rules, regulations, or other State action having the effect of law, of any State. A law of the United States applicable only to the District of Columbia shall be treated as a State law rather than a law of the United States.

■ In enacting this section Congress intended to completely occupy the field of employee benefit plans. In doing so, Con-

gress preempted all state laws which relate to employee benefit plans, not only state laws which directly attempt to regulate an area expressly covered by ERISA. *Dependahl v. Falstaff Brewing Corp.*, 653 F.2d 1208 (8th Cir.1981), *rehearing* and *rehearing en banc denied* (1981). As the explicit statement of federal preemption in section 1144 reflects, Congress "meant to establish pension plan regulation as exclusively a federal concern." *Alessi v. Raybestos-Manhattan, Inc.*, 451 U.S. 504, 523, 101 S.Ct. 1895, 1906, 68 L.Ed.2d 402 (1981).

Turning to plaintiff's state law claim, I note that Congress has specifically provided remedies for the type of wrong which this state law claim embraces. In 29 U.S.C. § 1132(a)(1)(B) ERISA states that:

(a) A civil action may be brought—

(1) by a participant or beneficiary—

(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;

Under ERISA a fiduciary will be held liable for the breach of his duties pursuant to 29 U.S.C. § 1109 which provides that:

(a) Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary. A fiduciary may also be removed for a violation of section 1111 of this title.

Moreover, ERISA also specifically prohibits the interference with a plan participants' or beneficiaries' rights in § 1140:

It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan, this subchapter, section 1201 of this title, or the Welfare and Pension Plans Disclosure Act, or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan, this subchapter, or the Welfare and Pension Plans Disclosure Act. . . .

29 U.S.C. § 1140.

Since plaintiff's state law claim addresses the same type of wrong prohibited by § 1132, 1109 and 1140 of ERISA, it is clear that plaintiff's claim is preempted.

Accordingly, Strick's and the Pension Plan's motion to dismiss is granted.