**Paul RIZZO, Plaintiff,**

v.

**PAUL REVERE INSURANCE GROUP, Defendant.**

**Civil Action No. 95–1791.**

United States District Court,
D. New Jersey.

May 22, 1996.

---

Barry E. Levine, Morris Plains, N.J., for Plaintiff.

Robert Wright, Andrew I. Hamelsky, Melli & Wright, P.C., Paramus, N.J., for Defendant.

ORLOFSKY, District Judge:

Plaintiff, Paul Rizzo, ("Rizzo"), filed this action against Paul Revere Life Insurance Company ("Paul Revere") under the civil enforcement provision, Section 502(a)(1)(B), of the Employee Retirement Income Security Act ("ERISA"),[1] seeking review of Paul Revere's decision to discontinue his long term disability ("LTD") insurance benefits. Jurisdiction is conferred upon this court by 28 U.S.C. § 1331. Defendant, Paul Revere, has filed a motion for summary judgment, pursuant to Fed.R.Civ.P. 56(b). Paul Revere contends that its decision to terminate Rizzo's LTD benefits is subject to review by this court only under an "arbitrary and capricious" standard of review. In opposition, Rizzo argues that this court should review *de novo* the decision to terminate his benefits.

The question presented requires this court to determine what standard of review should be applied to a decision by an ERISA fiduciary who, as "claims administrator," is vested with "full, final and binding" authority to make conclusive determinations of an individual employee's eligibility for long term disability benefits, when that fiduciary is also the insurer which underwrites the policy of

---

1. Codified at 29 U.S.C. § 1132(a)(1)(B) (West 1985).

long term disability insurance upon which the ERISA plan is based. For the reasons set forth below, this court concludes that, in the circumstances of this case, the decision of Paul Revere, acting in its capacity as "claims administrator" under the plan, should be reviewed under the more deferential "arbitrary and capricious" standard of review.

## I. Facts and Procedural History

Plaintiff, Paul Rizzo, is a thirty-five year old man who was last employed as a commercial truck driver and delivery person for Hudson Eagle Distributing Company ("Hudson Eagle"), a beer distributor. Rizzo's duties with Hudson Eagle often required him to lift cases and kegs of beer. On or about September 1, 1993, while in the course of his employment, Rizzo suffered a back injury. He sought medical treatment from Dr. Harold Fischer. Shortly thereafter, Dr. Fischer referred Rizzo to Dr. Gregory Gallick, who treated him briefly. Plaintiff's Brief in Opposition to Defendant's Notice of Motion for Summary Judgment ("Rizzo's Brief") at 4.

Defendant, Paul Revere, issued a group long term income disability insurance policy to Hudson Eagle on August 15, 1993, in which Rizzo was enrolled. Defendant's 12G Statement ¶ 2. The group policy, which bears the number G–44249, is an employee benefit plan within the meaning of ERISA,[2] because it was maintained by an employer for its employees. The employees, however, were responsible for 100% of the premiums of the group insurance, presumably through payroll deductions. Brief in Support of Defendant, Paul Revere's Motion for Summary Judgment ("Paul Revere's Brief"), exhibit 1, at 2. Hudson Eagle was responsible for making monthly premium payments to Paul Revere. *Id.* exhibit 2, at 1.

The policy provides LTD benefits to those who become "totally disabled," or are "residually disabled" as a result of an accident or disease affecting them while they work for Hudson Eagle. The LTD policy in which Rizzo was enrolled provides the following definitions of a disability for which coverage applies:

DISABLED OR DISABILITY These unqualified terms may mean either total disability or residual disability. This Policy provides benefits for:

1. total disability from any occupation;

2. total disability from the employee's own occupation; and

3. residual disability

. . . .

*Totally disabled from the employee's own occupation or total disability from the employee's own occupation* means:

1. because of injury or sickness, the employee cannot perform the important duties of his own occupation; and

2. the employee is under the regular care of a doctor; and

3. the employee does not work at all.

Rizzo's Brief, exhibit A, section 1.

Rizzo does not dispute that the Paul Revere policy, number G–44249, is governed by ERISA. Rizzo's Brief at 9. Furthermore, Paul Revere included in the policy application, which was signed by Hudson Eagle's President, Carlos A. Rivera, a Notice to Applicants. This Notice provided, in pertinent part, that:

The application will be attached to and form part of the policy.

. . . .

The coverage applied for provides benefits for the employee welfare benefit plan established and maintained by the employer

---

**2.** ERISA defines covered plans as follows:

The terms "employee welfare benefit plan" and "welfare plan" mean any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care

or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services, or (B) any benefit described in section 186(c) of this title (other than pensions on retirement or death, and insurance to provide such pensions).

29 U.S.C. § 1002(1) (West 1985).

under [ERISA], unless otherwise exempted by law. The employer is the Plan Administrator unless otherwise noted. The Paul Revere Life Insurance Company, as claims administrator, has the *full, final, binding and exclusive discretion* to determine eligibility for benefits and to interpret the policy under the plan as may be necessary in order to make claims determinations. The decision of claims administrator (sic) shall not be overturned unless arbitrary and capricious or unless there is no rational basis for a decision.

Paul Revere's Brief, exhibit 1, at 4. The policy is administered by Paul Revere, whose claims administrator retains the discretion to make eligibility determinations under the policy.

On January 18, 1994, Rizzo applied to Paul Revere for disability benefits under policy number G–44249. This claim for disability benefits included a certification by Dr. Gregory Gallick who treated Rizzo, three times a week, through a course of physical therapy, beginning on September 22, 1993. Paul Revere's Brief, exhibit 4. On October 8, 1993, Dr. Gallick noted that Rizzo had "reached maximum medical benefit," and physical therapy was halted. *Id.,* exhibit 5. On January 24, 1994, Rizzo began receiving benefits in the amount of $2,996.94 per month under the Paul Revere policy. Paul Revere's Brief at 5.

As required by the policy, each month that Rizzo received benefits he submitted an attending physician's statement. *Id.* On October 5, 1994, Rizzo submitted an attending physician statement completed by Dr. Gallick, in which, *inter alia,* Dr. Gallick opined

that Rizzo was no longer disabled and could return to work without restrictions as of October 11, 1994. Paul Revere's Brief, exhibit 5. On October 20, 1994, Charles F. Casey ("Casey"), a senior claims examiner with Paul Revere, wrote to Rizzo stating that his benefits had been terminated, as of October 11, 1994, based on Dr. Gallick's determination that Rizzo was no longer disabled. Certification of Charles F. Casey ¶ 6; Paul Revere's Brief, exhibit 6. Paul Revere's letter to Rizzo also notified him that he had 90 days in which he could challenge its decision to terminate his benefits.[3]

On November 3, 1994, Rizzo, through his attorneys, Levinson, Axelrod, Wheaton & Grayzel, appealed the decision to terminate benefits. Rizzo's Brief, exhibit D. On November 17, 1994, Rizzo provided Paul Revere with a report from Dr. Mark Friedman to whom Rizzo had been referred by his attorneys. Dr. Friedman opined that Rizzo was, in fact, still unable to do "any kind of work like he has done in the past." Rizzo's Brief, exhibit E, at 4. Plaintiff's attorneys had also provided Paul Revere with two reports, dated April 20, 1994 and July 1, 1994, respectively, from Dr. I. Ahmad, who concluded that plaintiff was totally disabled at the time of his office visits. Rizzo's Brief, exhibit F.[4]

Faced with these conflicting opinions, on January 10, 1995, Paul Revere requested that Rizzo be examined by Dr. Arthur T. Canario, an orthopedic surgeon at Newark Beth Israel Medical Center. Paul Revere's Brief at 6. Dr. Canario examined Rizzo and reported "no signs of disc herniation or radiculopathy." Paul Revere's Brief, exhibit 7. Dr. Canario concluded that Rizzo was capa-

---

3. The Secretary of Labor has established that the notice of a claim denial must:

> [P]rovide to every claimant who has been denied a claim for benefits written notice setting forth in a manner calculated to be understood by the claimant: (1) The specific reason or reasons for the denial; (2) Specific reference to pertinent plan provisions on which the denial is based; (3) A description of any additional material or information necessary for the claimant to perfect a claim and an explanation why such material or information is necessary; and (4) Appropriate information as to the steps to be taken if the participant or beneficiary wishes to submit his or her claim for review.

29 C.F.R. § 2560.503–1(f). Paul Revere's letter conforms to these requirements and Rizzo does not allege that he did not understand the claim denial letter.

4. These reports both note disc herniation at T11–T12, which was the result of an automobile accident in May, 1991, before coverage under the Paul Revere policy was implicated. In January, 1995, Dr. Canario could find "no signs of disc herniation," but added that Rizzo's symptoms, at T4–T5, were "considerably higher" than T11–T12. Rizzo's Brief, exhibit G. Thus, the claimed disability at issue in this action is unrelated to the disc herniation, if any, at T11–T12.

ble of doing work "as a truck driver or wherever else he may find employment in the general population," adding "I do not find him disabled." *Id.* On February 21, 1995, Casey wrote to Rizzo, finally denying Rizzo's appeal and any claim for current or future benefits. Rizzo's brief, exhibit H.

On February 15, 1995, Rizzo filed suit in the Law Division of the Superior Court of New Jersey in Middlesex County, alleging breach of contract. Asserting that Rizzo's action was governed by ERISA, defendant removed the Middlesex County action to this Court by Notice of Removal filed April 19, 1995, pursuant to 28 U.S.C. § 1446. On June 1, 1995, Rizzo filed an amended complaint alleging that Paul Revere had violated ERISA by "wrongfully depriv[ing] plaintiff of benefits." Amended Complaint ¶ 8. By order of Magistrate Judge Rosen, dated April 4, 1996, Paul Revere was granted leave to amend its answer to assert a counterclaim against Rizzo for the amount of benefits already paid to him.

On April 18, 1996, Paul Revere filed the present Notice of Motion for Summary Judgment. Paul Revere's amended answer in this action was filed April 29, 1996.[5]

## II. Standard for Summary Judgment

A party seeking summary judgment must "show that there is no genuine issue as to any material fact and that [he] is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). *See also Hersh v. Allen Products Co.,* 789 F.2d 230, 232 (3d Cir.1986); *Lang v. New York Life Ins. Co.,* 721 F.2d 118, 119 (3d Cir.1983). The district court must grant summary judgment when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Orson, Inc. v. Miramax Film Corp.,* 79 F.3d 1358, 1366 (3d Cir.1996). In deciding whether there is a disputed issue of material fact the Court must draw all inferences from the underlying facts in favor of the nonmoving party. *See Hancock Indus. v. Schaeffer,* 811 F.2d 225, 231 (3d Cir.1987) (citation omitted); *Pollock v. American Telephone & Telegraph Long Lines,* 794 F.2d 860, 864 (3d Cir.1986).

## III. Analysis

### A. The Standard of Review of a Decision of an ERISA Fiduciary

■ When a plaintiff challenges a benefit decision made by an ERISA plan administrator, or by any fiduciary to whom decision-making authority has been delegated under the plan,[6] the appropriate standard of review of that decision is determined by referring to the plan language itself.

■ In *Firestone Tire and Rubber Co. v. Bruch,* 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), the Supreme Court employed principles of trust law to determine that, in actions under Section 502(a)(1)(B), "a denial of benefits ... is to be reviewed under the *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Id.* at 115, 109 S.Ct. at 956. If the plan provides such discretionary authority, the "arbitrary and capricious" standard of review applies. *Id.* at 111, 109 S.Ct. at 954–55 (citing Restatement (Second) of Trusts § 187 (1959)) ("[w]here discretion is conferred upon the trustee with respect to the exercise of a power, its exercise is not subject to control by the court except to prevent an abuse by the trustee of his discretion"). *See also Hullett v. Towers, Perrin, Forster & Crosby, Inc.,* 38 F.3d 107, 114 (3d Cir.1994); *Gillis v. Hoechst Celanese Corp.,* 4 F.3d 1137, 1140–41 (3d Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1369, 128 L.Ed.2d 46 (1994).

■ Discretionary authority need not be expressly granted, but may be implied by the plan's terms. *Hullett,* 38 F.3d at 114 (citing

---

5. Defendant is not presently moving for summary judgment on its counterclaim. On May 8, 1996, plaintiff filed his reply to the counterclaim. Pursuant to a Scheduling Order entered by Magistrate Judge Rosen on March 14, 1996, trial in this matter is scheduled to commence on June 3, 1996.

6. ERISA allows plans to provide procedures "for named fiduciaries to designate persons other than named fiduciaries to carry out fiduciary responsibilities (other than trustee responsibilities) under the plan. 29 U.S.C. § 1105(c)(1)(B) (West 1985).

*Luby v. Teamsters Health Welfare & Pension Trust Funds,* 944 F.2d 1176, 1181 (3d Cir.1991)). The Paul Revere policy at issue in this case, by its express terms, grants discretionary authority to Paul Revere, as claims administrator. Accordingly, this Court's analysis must start from the premise that review of the claims administrator's decision must be guided by the "arbitrary and capricious" standard. *Abnathya v. Hoffmann–La Roche,* 2 F.3d 40 (3d Cir.1993).[7]

### B. Heightened Scrutiny

 Rizzo argues, however, that Paul Revere, as "claims administrator," labors under an inherent conflict of interest, since any amount not paid out in claims represents a savings to "Paul Revere," the insurer and the "claims administrator's" employer. Rizzo's Brief at 11. The Supreme Court has noted that when discretion is given "to an administrator or fiduciary who is operating under a conflict of interest," that conflict must be weighed as a "facto[r] in determining whether there is an abuse of discretion." *Firestone,* 489 U.S. at 115, 109 S.Ct. at 957 (quoting Restatement (Second) of Trusts § 187, cmt. d (1959)). In order to warrant the application of a more stringent standard of review, however, the record must reflect a genuine conflict of interest. *See Nazay v. Miller,* 949 F.2d 1323, 1335 (3d Cir.1991). *See also Atwood v. Newmont Gold Co.,* 45 F.3d 1317, 1323 (9th Cir.1995) (district court must first determine whether the affected beneficiary has provided "material, probative evidence, beyond the mere fact of the apparent conflict, tending to show that the fiducia-

ry's self-interest" caused the administrator to breach its fiduciary duty, otherwise, the court applies the traditional abuse of discretion standard of review); *Cuddington v. Northern Ind. Public Serv. Co.,* 33 F.3d 813, 816 (7th Cir.1994) (refusing to consider an alleged conflict of interest in reviewing a denial of pension benefits under the "arbitrary and capricious" standard on the ground that the plaintiff did not present specific evidence supporting its allegations of a conflict of interest); *Kotrosits v. GATX Corp. Non–Contributory Pension Plan,* 970 F.2d 1165, 1173 (3d Cir.), *cert. denied,* 506 U.S. 1021, 113 S.Ct. 657, 121 L.Ed.2d 583 (1992) ("anyone urging that a court disregard [a reservation of discretionary authority by the plan] has the burden of showing some reason to believe the exercise of discretion has been tainted").

Three factors led to a finding that there was no significant conflict of interest in *Nazay.* These were: (1) The absence of any "allegations of bad faith;" (2) the fact that the employer (the plan administrator) had "incentives to avoid the loss of morale and higher wage demands that could result from denials of benefits;" and, (3) the fact that the challenged decision was "an individual rather than a class determination." *Id.* Rizzo does not allege bad faith. Moreover, the denial of his benefits was an individual, not a class, determination. The only factor upon which Rizzo can base an allegation of conflict of interest is that the fiduciary, in this case, has a financial incentive to deny claims and possesses no off-setting disincentive in the form of potential higher wage demands from em-

---

7. One district court has identified a possible conflict in Third Circuit precedent in cases in which the plaintiff challenges a fiduciary's decision based upon a "purely" factual question. In *Mitchell v. Eastman Kodak Co.,* 910 F.Supp. 1044 (M.D.Pa.1995), the court cites *Luby,* 944 F.2d at 1183, in support of the application of a *de novo* standard of review to factual issues, and questions *Abnathya's* application of an "arbitrary and capricious" standard of review when "the only issue was purely factual, *i.e.,* the extent of plaintiff's disability" *Id.* at 1049. No "precedential" conflict arises, however, on the facts of this case. *Luby* holds only that *de novo* review of an administrator's fact-based determinations is appropriate "unless the plan specifically provides that his

determinations of fact be given deference." *Luby,* 944 F.2d at 1187. The plan at issue in this case specifically provides that the claims administrator has discretion "to determine eligibility for benefits *and* to interpret the policy under the plan as may be necessary in order to make claims determinations, [which] shall not be overturned unless arbitrary and capricious or unless there is no rational basis for a decision." Paul Revere's Brief, exhibit 1, at 4 (emphasis added). Thus, Paul Revere retained discretion, under an "arbitrary and capricious" standard of review, as to both legal determinations, such as questions of policy interpretation, and factual issues, such as an individual's eligibility for benefits.

ployees.[8] This is an inevitable result of the employer's decision to delegate the discretion to make benefit determinations to the insurer who also writes the policy supporting the ERISA plan.

■ Unlike the Eleventh Circuit, the Third Circuit has not yet decided a case involving a self-interested insurance company, which has discretion to determine eligibility for benefits. However, in distinguishing cases where a conflict did not exist, the Third Circuit has not disapproved of the Eleventh Circuit's approach. *See DiMichelle v. The Travelers Insurance Co.*, No. CIV. A. 92–1749, 1993 WL 481713 at *6 (E.D.Pa. Nov. 17, 1993) (citing *Nazay*, 949 F.2d at 1335 n. 16).

The leading Eleventh Circuit case addressing the question of the proper standard of review to be applied when presented with such a potential conflict of interest is *Brown v. Blue Cross and Blue Shield of Alabama, Inc.*, 898 F.2d 1556 (11th Cir.1990), *cert. denied*, 498 U.S. 1040, 111 S.Ct. 712, 112 L.Ed.2d 701 (1991). *Brown* involved an insurance company charged with the fiduciary's role as administrator of an ERISA group health plan. The Eleventh Circuit held that, while it was "not prepared to abandon the use of the arbitrary and capricious standard for insurance policy plans that confer discretion ... [it would] find[ ] abuse of discretion more readily when conflicting interests are apparent." *Id.* at 1563.

In this case, Paul Revere is the designated ERISA administrator of policy number G–44249, which Paul Revere also issued. Thus, this court, like the court in *Brown*, is confronted with a situation in which the ERISA fiduciary is also the insurance company that issued the policy that undergirds the plan. *See also Pitman v. Blue Cross and Blue Shield of Oklahoma*, 24 F.3d 118, 122 (10th Cir.1994) (quoting *Brown* ). The Eleventh Circuit elaborated on this inherent conflict in *Brown*, when it wrote:

> Decisions made by the issuing company on behalf of a plan based on a contract of insurance ... inherently implicate the hobgoblin of self-interest. Adverse benefits determinations save considerable sums

that are returned to the fiduciary's corporate coffers. The presumption that the fiduciary is acting for the future stability of the fund cannot be entertained.

*Brown*, 898 F.2d at 1568. *Brown* is persuasive and directly applicable to the facts in this case. Accordingly, this court finds that Paul Revere's dual role as policy number G–44249's claims administrator and as the issuing insurance company creates what was described in *Brown* as the "hobgoblin of self-interest." *Id.; see also Cargile v. Confederation Life Ins. Group Plans*, 748 F.Supp. 874, 877–78 (N.D.Ga.1990) (applying *Brown* test to situation where plaintiff was employee of an insurance company that administered a plan composed of a policy it had issued to itself).

The Court of Appeals for the Sixth Circuit applied the Eleventh Circuit's analysis in *Brown* to the facts in *Miller v. Metropolitan Life Ins. Co.*, 925 F.2d 979 (6th Cir.1991). The court found that a dual relationship of fiduciary and insurer inevitably creates a significant conflict of interest, but ultimately concluded on the record before it, that the insurance company's decision was reasonable, *i.e.*, that it was not an abuse of discretion. *Id.* at 985. In *Miller*, the insurance company terminated disability benefits after it; (1) received a letter from the employee's treating physician, which showed that her disability was in partial remission; and, (2) obtained an independent examination by a physician designated by the insurance company. The Sixth Circuit determined that, in light of the plan's provisions stating that the insurance company may demand further proof of disability, the insurance company's decision would not be disturbed despite the conflict of interest. *Id.* In other words, the *Miller* court determined that the insurance company's decision was a reasonable interpretation of the plan.

Procedurally, the *Brown* analysis first requires *de novo* review of the plan administrator's decision in order to determine whether it is a legally correct interpretation of the relevant plan provisions. *Brown*, 898 F.2d at

8. On these facts, the disincentive of higher wage demands did not even exist for Hudson Eagle since its employees financed their own group benefits. Paul Revere's Brief, exhibit 1, at 2.

1566 n. 12. Only if the administrator's decision is "wrong, but apparently reasonable," does the court inquire whether the "wrong" decision was tainted by self-interest. *Id.* at 1566. Decisions that are tainted by self-interest are deemed "arbitrary and capricious." *Id.* at 1567. Therefore, the threshold question in this court's inquiry is whether Paul Revere's claims administrator correctly applied the policy's relevant provisions when he denied further disability benefits to Rizzo.

### C. Application of the Brown Analysis

█ Upon a careful review of the record in this case, it cannot be said that Paul Revere's decision to terminate Rizzo's benefits was "wrong." On the contrary, the decision to terminate Rizzo's long term disability benefits is consistent with the plain language of the policy and cannot be said to depend upon a mistaken reading of the policy's definition of disability, as plaintiff's counsel suggests.

Dr. Gallick's report of Rizzo's condition, dated October 5, 1994, which gave rise to Paul Revere's denial of continued disability benefits, simply records that Rizzo should be able to return to work "without restrictions" as of October 11, 1994. Paul Revere's Brief, exhibit 5. This can have come as no surprise to Rizzo, who admits that Dr. Gallick told him on the date of his last visit, October 8, 1993, that "it was okay for me to return to work at that time." Affidavit of Paul Rizzo ¶ 7. The record does not reveal why Dr. Gallick was still filling out the Attending Physician's Statement on Rizzo's behalf over a year after Rizzo's last office visit.[9] It is clear from the terms of the policy that a beneficiary "must be under the care of a doctor while totally disabled." Paul Revere's Brief, exhibit 2, section 2.

█ Plaintiff's counsel criticizes Paul Revere's reliance upon Dr. Canario's conclusion that Rizzo was capable of doing work "as a truck driver or wherever else he may find employment in the general population," because Dr. Canario did not specifically find that Rizzo was capable of the heavy lifting involved in his job as a delivery person for Hudson Eagle. Rizzo's Brief at 7–8. In short, plaintiff asserts that Rizzo's "own occupation" was that of "a beer truck driver," a job requiring heavy lifting which Rizzo allegedly could no longer do. Rizzo's Brief at 3. Plaintiff contends for too narrow a definition of "total disability" under the policy. Even if plaintiff were limited in his ability to lift heavy objects, a limitation which Dr. Canario's report nowhere indicates and which was rejected by Paul Revere's claims administrator based on the record before him, Rizzo could still be able to fulfill all the "important duties" of a truck driver and delivery person, although perhaps not with Hudson Eagle.

In sum, Paul Revere correctly construed the relevant policy provisions in making its determination to discontinue Rizzo's long term disability benefits. Therefore, this court's review of the administrator's decision must be conducted under the "arbitrary and capricious" standard.

### D. Application of the "Arbitrary and Capricious" Standard

█ The "arbitrary and capricious" standard calls for this court to defer to the claims administrator's decision, unless that decision is " 'without reason, unsupported by substantial evidence or erroneous as a matter of law.' " *Abnathya*, 2 F.3d at 45 (quoting *Adamo v. Anchor Hocking Corp.*, 720 F.Supp. 491, 500 (W.D.Pa.1989)). The scope of this review is necessarily narrow. *Id.* Consequently, this court "is not free to substitute its own judgment for that of the defendants in determining eligibility for plan benefits." *Id.* (quoting *Lucash v. Strick Corp.*, 602 F.Supp. 430, 434 (E.D.Pa.1984)). The "arbitrary and capricious" standard of review is essentially one and the same as the "abuse of discretion" standard. *Id.*

█ Because this court concludes that Paul Revere's decision to terminate Rizzo's LTD benefits is subject to an abuse of discretion standard of review, *Abnathya* is particularly compelling authority. In *Abnathya*, the Third Circuit reversed the district court's grant of summary judgment to the plaintiff, and ordered entry of summary judgment in

---

**9.** Plaintiff's then counsel, Maurice J. Nadeau, Esq., told Paul Revere that Dr. Gallick filled out the forms "as a courtesy." Rizzo's Brief, exhibit D.

favor of the plan administrator. *Id.* at 48. In so doing, the Third Circuit held that it was reasonable for the plan administrator to base his decision to terminate LTD benefits on independent evaluations by two medical doctors chosen by the plan, rather than the testimony of Abnathya's treating physician. *Id.* at 47. Rizzo attempts to distinguish *Abnathya* on the basis that the plaintiff underwent a second independent medical examination, prompted in part by her dissatisfaction with the first examination.[10] *Id.* at 43.

Rizzo's argument fails to recognize two important points, one factual and one legal. First, in *Abnathya*, it was the initial independent examination which presented the plan administrator with a difference of opinion with the plaintiff's treating physician. *Id.* In the present case, it was Rizzo's own treating physician who created the initial difference of opinion, which Dr. Canario was then called upon to resolve. More importantly, *Abnathya* makes it clear that a fiduciary's decision is not arbitrary and capricious even though it is based upon a single independent medical evaluation, especially when the plan specifically requires the beneficiary to establish his continuing entitlement to benefits. *Id.* at 47 (citing, with approval, *Miller,* 925 F.2d at 985).

■ Rizzo's counsel also protests that Dr. Canario issued only a "two-page summary" of his examination of the plaintiff, noting that Rizzo, like the plaintiff in *Abnathya*, complained of the "cursory nature" of the examination. Rizzo's Brief at 15; Affidavit of Paul Rizzo at ¶ 14. The Third Circuit brushed aside the identical criticism in *Abnathya*, noting that the plaintiff had not submitted any evidence that the examination was inadequate or that the two-page report was "below the standards in the profession." *Abnathya,* 2 F.3d at 47. Aside from Rizzo's own affidavit, there is no evidence in this case that Dr. Canario's examination was flawed in any way.

The record reveals no abuse of discretion in this case. Accordingly, the motion of defendant, Paul Revere Life Insurance Company, for summary judgment on plaintiff's complaint, will be granted.

---

10. The first independent examination of Abnathya, coincidentally, was conducted by Dr. Arthur