Calvin MORRIS, Plaintiff,

v.

**PAUL REVERE INSURANCE GROUP, Defendant.**

Civil Action No. 96–3217.

United States District Court, D. New Jersey.

Nov. 12, 1997.

Mark A. Rinaldi, Morelli & Rinaldi, P.C., Voorhees,. NJ, for Plaintiff, Calvin Morris.

Douglas F. Johnson, Samantha Pettine, Earp, Cohn & Pendery, Westmont, NJ, for Defendant, Paul Revere Life Ins. Co.

## OPINION

ORLOFSKY, District Judge.

Plaintiff brought this action to recover disability benefits under several insurance policies issued by Defendant. Defendant has moved for partial summary judgment and Plaintiff has cross-moved for partial summary judgment and for leave to file an amended complaint. This Court's jurisdiction has been invoked pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(e)(1), as well as 28 U.S.C. §§ 1332, 1441.

The pending motions require resolution of several difficult legal issues arising under the law of ERISA. First, I must determine whether ERISA's "Safe Harbor Provision," 29 C.F.R. § 2510.3–1(j), exempts insurance policies from ERISA where an employee intended to pay the insurance premiums personally, but an accounting error caused his employer to pay the premiums. This appears to be an issue of first impression. I conclude that the employee's intent to pay the insurance premiums personally is irrelevant to the applicability of ERISA's Safe Harbor Provision. Therefore, I hold that the Safe Harbor Provision does not exempt the insurance policies at issue from ERISA's coverage. *See infra* Part III.A.2.

Second, I must determine which standard of review to apply to the denial of benefits by an ERISA Claims Administrator under different types of insurance policies. I conclude that the denial of benefits should be reviewed under a heightened "arbitrary and capricious" standard of review where the Claims Administrator exercised considerable discretion under the policy despite operating under a conflict of interest, but that plenary review is appropriate where the policies conferred no such discretion on the Claims Administrator. *See infra* Part III.B.

Finally, in the circumstances of this case, and notwithstanding New Jersey's Entire

Controversy Doctrine, I find that Rule 20(a) of the Federal Rules of Civil Procedure, governing the permissive joinder of parties, precludes joinder of the insured's accountants even though their alleged malpractice may have caused ERISA to apply to insurance policies at issue in this litigation. *See infra* Part V.C.

Accordingly, for the reasons set forth below: Defendant's motion for partial summary judgment will be granted in part and denied in part; Plaintiff's motion for summary judgment will be denied; and Plaintiff's motion for leave to amend the complaint will be granted in part and denied in part.

## I. BACKGROUND

This case arises from a series of insurance policies issued by Defendant, Paul Revere Life Insurance Company ("Paul Revere"). The following facts are not in dispute, except where otherwise noted.

### A. The Insurance Policies

Plaintiff, Calvin Morris ("Morris"), a chiropractor, was the co-owner of Cherry Hill Chiropractic Center ("CHCC") until he became its sole owner on December 31, 1994. *See* Plaintiff's Ex. M, Affidavit of Dr. Calvin Morris ("Morris Aff.") at ¶ 7. In March 1984, Paul Revere issued to CHCC a group insurance policy which provided disability insurance coverage for CHCC employees (the "Group Policy"). Mat. Facts at 1.[1] Between March 1986 and May 1989, Paul Revere issued a series of five insurance policies to Morris individually (the "Individual Policies"). *See* Plaintiff's Exs. C, E, G, I, K; Mat. Facts at ¶¶ 8–12.[2]

The Group Policy named Paul Revere as the Claims Administrator for that policy.

*See* Mat. Facts at ¶ 7. According to the Group Policy:

> [ ] Paul Revere is the Claims Administrator for benefits contained in the Group Policy. As Claims Administrator, The Paul Revere will make all decisions regarding eligibility for benefits and benefit determinations and will do so in accordance with the terms and conditions of the Group Policy. The Claims Administrator has full, final, complete, conclusive, and exclusive discretion to determine eligibility for coverage and benefits under the Group Policy, to determine the amount of any benefits payable under the Group Policy, and to construe and interpret the terms and conditions of the Group Policy and all related documents.... Any decision by the Claims Administrator shall be final and binding on all parties and must be upheld in a court of law unless a participant, beneficiary or their party proves that the decision is arbitrary and capricious and there is no rational basis for the decision.

*Id.* at ¶ 7. The Individual Policies do not contain similar language.

### B. Funding of the Policies

CHCC paid the Group Policy's premiums through April 1997. Mat. Facts at ¶ 30. CHCC also paid the premiums for all of the Individual Policies. *Id.* at ¶¶ 32–33. The applications for two of the Individual Policies indicate that Morris would pay the premiums. The applications for two others reflect that CHCC would pay the premiums and the application for the fifth policy reveals that CHCC was to pay the premiums, but that the amount would be included in Morris' taxable income. Plaintiff's Exs. D, F, H, J, L.

---

1. Pursuant to Local Civil Rule 56.1, formerly General Rule 12G, both parties have filed Statements of Material Facts. That rule provides: "On motions for summary judgment, each side shall furnish a statement which sets forth material facts as to which there exists or does not exist a genuine issue." Local Civ. R. 56.1. Where the parties have explicitly agreed on these facts, they will be cited as "Mat. Facts."

2. On March 6, 1986, Paul Revere issued disability income policy number 0102226263 to Morris. Mat. Facts at ¶ 8. On May 22, 1986, Paul Revere issued disability income policy number 0102234188 to Morris. *Id.* at ¶ 9. On May 4, 1989, Paul Revere issued disability income policy number 0102393215 to Morris. *Id.* at 12. Paul Revere also issued disability income policy number 0102280779 and a business overhead expense policy, numbered 0102280780, to Morris. According to Paul Revere, these policies were issued on May 4, 1987, but Morris alleges that they were issued on April 4, 1987. *Id.* at ¶¶ 10–11.

According to Morris, however, he had instructed his accountant, David B. Cohen, C.P.A., to include the amount of the premiums for all five Individual Policies in his taxable income. Morris Aff. at ¶ 3; *see also* Mat. Facts at ¶ 31. This was designed to avoid tax consequences for receiving benefits under the Individual Policies. *See* Plaintiff's Ex. P, Deposition of David B. Cohen ("Cohen Dep.") at 8. In April 1997, Morris claims to have discovered for the first time that the premiums paid by CHCC for the Individual Policies had been deducted as a business expense by CHCC, rather than applied against his personal draw account as he had instructed. Morris Aff. at ¶ 5; Mat. Facts at ¶ 32. Upon learning of this error, Morris filed amended personal and business income tax returns for the years 1992 through 1995 for himself and CHCC. Mat. Facts at ¶ 33. The amended returns restructured the premium payments to show that Morris, and not CHCC, had paid them. *Id.*

### C. Scope of Coverage

#### 1. The Group Policy

The Group Policy provides benefits to any "employee" of CHCC in the event of total disability. The Group Policy defines the term "employee" as:

> any person who works full time for a participant employer. You must be paid by your employer for work done at your employer's usual place of business or some other location which is usual for your particular duties. It cannot be your residence.

Defendant's Ex. A at 4; *see* Mat. Facts at ¶ 3. The policy further defines "full time" employment as the "employer's normal work week of at least thirty hours." Mat. Facts at ¶ 4.

According to the original Group Policy, for an employee to be "totally disabled" means: "(a) that because of injury or sickness, you cannot perform any of the material and substantial duties of your own occupation; (b) you are under the regular care of a doctor; and (c) you do not work at all." Defendant's Ex. A at 2.[3] Included with the copy of the Group Policy provided to the Court is a page purporting to amend the original definition of "totally disabled." *See* Defendant's Ex. A. The amended definition replaces the phrase "any of the material and substantial duties" with "any of the important duties." *See Id.*

#### 2. The Individual Policies

The Individual Policies provide benefits to Morris in the event of a "total disability." Each of the disability policies contains a Rider, effective on the date of the policy, which defines "total disability" as when, "because of injury or sickness: (1) You are unable to perform the important duties of Your regular occupation; and (2) You are under the regular and personal care of a physician." Plaintiff's Exs. C, E, I, K. The business overhead expense policy contains a similar Rider which defines "total disability" as when "because of injury or sickness: (a) You are under the regular and personal care of a Physician; and (b) You are substantially unable to perform the important duties of Your regular occupation." Plaintiff's Ex. G.[4]

### D. Morris' Pre-disability Employment

On each of the Individual Policies, Morris listed his occupation as "Chiropractor" and his duties as "usual to practice" or "usual to profession." *See* Plaintiff's Exs. C, E, G, I, K. According to Morris, in 1994, the year immediately preceding his injury, he was effectively in charge of both CHCC and Statewide Chiropractic of Camden ("Statewide").

---

3. The Group Policy provides a slightly different definition of "totally disabled" for employees who are trial attorneys or doctors. In that case, the first element of the definition refers to "any of the material and substantial duties of your specialty in the practice of law or medicine." *Id.* Neither party cites either definition, much less identifies which one applies to Morris. Because my decision turns on language common to both definitions, however, I need not address this distinction.

4. In a letter to Morris, dated March 25, 1996, rejecting Morris' claim for benefits, Paul Revere asserted that the Individual Policies "define total disability in part as 'because of injury or sickness you are unable to perform *one or more* of the important duties of your regular occupation.'" Plaintiff's Ex. GG (emphasis added). Paul Revere has not urged this definition upon the Court and this language does not appear in the Individual Policies.

*See* Morris Aff. at ¶ 7. Statewide is and was a separate entity from CHCC. *See* Mat. Facts at ¶ 42. During that time, Morris worked actively at each office in both administrative and chiropractic capacities. *See* Morris Aff. at ¶ 8. Morris claims that "[to] separate my exact job responsibilities between both the Camden and the Cherry Hill office[s] would be an impossible task quite simply because many of the administrative and chiropractic responsibilities involve countless hours that, necessarily, cannot be accounted for." *Id.* at ¶ 9.

On his application for benefits, Morris listed the duties of his occupation, "in order of importance:"

Duty: CHIROPRACTOR 36 hours [per week]

Description: Manual Chiropractic adjustments, examinations, x-rays, consultations, administering therapy, progress notes, interm examinations.

Duty: General Office Work 2 hours [per week]

Description: Telephone conversations with consulting doctors, reports, diagnosis, hand writing reports for each patient at end of treatments, diagnosis, CPT codes.

Duty: Banking/Bookkeeping 1 hour [per week]

Description: Daily deposits of office incoming checks, paying bills, buying of office supplies and equipment.

Duty: Overseeing of second Chiropractic Office 6 hours [per week]

Description: Traveling to/from Camden office 2x weekly—duties are training of chiropractor, manual chiropractic adjustments, examinations, x-rays, therapy, maintance [sic] and equipment of second office. General office notes and bookkeeping.

Defendant's Ex. D, Exhibit 1 at 4; Mat. Facts at ¶ 16.

Morris saw patients on an "as needed" basis at CHCC. *See* Mat. Facts at ¶ 39. The majority of Morris' time in 1994 was spent at Statewide in Camden while another chiropractor, Dr. Wolfe, worked full time at CHCC. *See* Mat. Facts at ¶ 35–36. In that year, Morris saw 311 patients at CHCC while Dr. Wolfe saw 5,009 patients at CHCC. *See Id.* at ¶ 37.

### E. Denial of Benefits

On May 17, 1995, Morris applied to Paul Revere for disability benefits under the Group Policy and each of the Individual Policies. Mat. Facts at ¶¶ 13–14. Morris claimed that he suffered from left elbow epicondylitis (lateral) with calcified tendinitis and left carpal tunnel syndrome. *Id.* at 15. Paul Revere characterizes Morris' condition as "tennis elbow," a characterization to which Morris objects. *Id.*

On March 25, 1996, Paul Revere denied Morris' application for benefits under the Individual Policies, and did the same under the Group Policy on the following day. *Id.* at ¶¶ 19–20. On March 29, Morris wrote to Paul Revere objecting to the findings of the examining physician. *Id.* at ¶ 21. By letter dated May 2, Paul Revere inquired as to whether Morris' letter of March 29 was intended to serve as an appeal of the denial of benefits. *Id.* at ¶ 22. On June 2, Paul Revere denied Morris' appeal. *Id.* at ¶ 23.

That same month, Morris filed this action in New Jersey state court and Paul Revere filed a timely notice of removal. *Id.* at ¶ 24–25. The complaint alleges: (1) that Morris is entitled to long-term disability benefits under the Group Policy and the Individual Policies; (2) that Paul Revere breached its contracts with Morris by refusing long-term disability benefits under the Group Policy and under the Individual Policies; and (3) that Paul Revere wrongfully denied benefits to Morris under the Individual Policies.

### II. SUMMARY JUDGMENT STANDARD

A party seeking summary judgment must "show that there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "In deciding whether there is a disputed issue of material fact, the Court must view all inferences, doubts and issues of credibility in favor of the non-moving party." *Van de Zilver v. Rutgers University*, 971 F.Supp. 925, 931 (D.N.J.1997) (citing *Hancock Indus. v. Schaeffer*, 811 F.2d 225, 231

(3d Cir.1987)). Thus, a court must first determine whether "any genuine factual issues [exist] that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby. Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

Moreover, where the moving party supports its position, the non-moving party must offer evidence to rebut the claim. *See* Fed. R.Civ.P. 56(e). According to that rule:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

*Id.* Essentially, a court will grant summary judgment on an issue where: (1) the moving party has provided support for its position; and (2) the non-moving party has failed to offer evidence to show that a question of material fact remains. *See Matsushita Elec. Indus., Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986).

## III. PAUL REVERE'S MOTION FOR PARTIAL SUMMARY JUDGMENT

### A. Applicability of ERISA

■ Paul Revere moves for summary judgment on the issue of ERISA's applicability to the Group Policy and to the Individual Policies. ERISA generally governs any plan, fund, or program established or maintained by an employer for the purpose of providing disability benefits to participants or their beneficiaries. *See Donovan v. Dillingham,* 688 F.2d 1367, 1371 (11th Cir.1982). "Whether a plan exists within the meaning of ERISA is a question of fact, to be answered in light of all the surrounding facts and circumstances from the point of view of a reasonable person." *Deibler v. United Food and Commercial Workers' Local Union 23,* 973 F.2d 206, 209 (3d Cir.1992).

### 1. The Group Policy

Morris concedes that the Group Policy is governed by ERISA. Plaintiff's Memorandum at 4. Morris further concedes that "ERISA precludes all state law claims as those claims relate to the group policy...." *Id.* at 17. The Court finds summary judgment appropriate on this issue. *See* 29 U.S.C. § 1002(1) (defining plans covered by ERISA); 29 U.S.C. § 1144(a) (preempting state law).

### 2. The Individual Policies

■ Morris contends that the Individual Policies are not subject to ERISA. He claims that CHCC did not establish or maintain the Individual Policies as required by ERISA because he intended to pay the premiums himself and would have paid them but for his accountant's error.

Morris relies upon ERISA's "Safe Harbor Provision" to exclude the Individual Policies from the definition of an ERISA plan. "[T]he Secretary of Labor, pursuant to 29 U.S.C. § 1135, promulgated a safe harbor regulation describing when (and to what extent) an employer ... may be involved with an employee welfare benefit program without being deemed to have 'established or maintained' it." *Johnson v. Watts Regulator Co.,* 63 F.3d 1129, 1133 (1st Cir.1995) (citing 40 Fed.Reg. 34,527 (1975)). The Safe Harbor Provision excludes from ERISA's purview those plans in which:

> (1) No contributions are made by an employer or employee organization;
>
> (2) Participation [in] the program is completely voluntary for employees or members;
>
> (3) The sole functions of the employer or employee organization with respect to the program are, without endorsing the program, to permit the insurer to publicize the program to employees or members, to collect premiums through payroll deductions or dues checkoff and to remit them to the insurer; and
>
> (4) The employer or employee organization receives no consideration in the form

of cash or otherwise in connection with the program, other than reasonable compensation, excluding any profit, for administrative services actually rendered in connection with payroll deductions or dues checkoffs.

29 C.F.R. § 2510.3–1(j). The issue presented by the pending motion is whether the employer's payment of all premiums, as prohibited by subsection (1), removes the plan from the Safe Harbor Provision even though the insured intended to pay the premiums himself, failed to do so only because of his accountant's mistake, and filed amended business and personal income tax returns charging the premiums to himself.

Assuming the truth of the facts alleged by Morris, Morris always intended to pay the premiums himself on each of the Individual Policies. *See* Morris Aff. at ¶ 3. Morris instructed his accountant, from the outset, to charge the premiums paid by CHCC against his personal draw account. *Id.* This was to ensure that Morris' receipt of benefits under the Individual Policies would not be taxable. *See* Cohen Dep. at 8. Morris' instructions, however, were not followed and CHCC, in fact, paid all of the premiums. See Morris Aff. at ¶ 5. Upon learning of this error, Morris filed amended personal and business income tax returns covering the years 1992 through 1995 for himself and CHCC which reflected his payment of the Individual Policies' premiums during that time. *See Id.*

ERISA's Safe Harbor Provision may cover situations where an employer pays insurance premiums and deducts their value from an employee's salary. *See* 29 C.F.R. § 2510.3–1(j) (providing safe harbor where employer serves "to collect premiums through payroll deductions ... and to remit them to the insurer"); *see also St. Martin v. Provident Life & Accident Ins. Co.,* Civ. Action No. 92–4244, slip op., 1993 WL 262708 (E.D.La. July 2, 1993) (Plaintiff's Ex. T). In this case, however, Morris is forced to rely on his intent to pay, and his retroactive payment of, the premiums. These facts cannot avail him.

Morris recites, at great length, the circumstances and conclusions of the Eastern District of Louisiana's unpublished opinion in *St. Martin.* That case held that an individual disability policy was not governed by ERISA even though the application for the policy indicated that the insured's employer would pay the premiums. In *St. Martin,* however, the employee-insured *did* pay all the premiums. Here, on the other hand, CHCC, not Morris, paid the premiums. Thus, *St. Martin* provides little, if any, support for Morris' position.

Paul Revere similarly relies on the unpublished opinion in *Kaihlanen v. Paul Revere Life Ins. Co.,* Civ. Action No. SA–94–CA–0399, slip op. (W.D.Tex. Mar. 13, 1995) (Defendant's Memorandum at Exhibit 1), for the proposition that Morris' intent is irrelevant because CHCC paid the insurance premiums. Although the opinion is not entirely clear on this issue, it implies the opposite. In *Kaihlanen,* the Company purchased an individual disability policy for the plaintiff employee and paid all of the premiums. The plaintiff alleged that he had always intended to pay the premiums himself but had, by oversight, failed to instruct his accountant to that effect. Paul Revere emphasizes the court's ultimate conclusion that ERISA's Safe Harbor Provision did not apply to the policy because "the Company did contribute to the plan and the Company did more than simply collect and forward premiums." *Id.* at 9.

Paul Revere, and Morris, fail to note, however, that in *Kaihlanen* the court found it necessary to hold an evidentiary hearing. That implies that the court's conclusion was dependant upon findings of fact and consequently that, had the court determined that the plaintiff did intend to pay the premiums, the insurance policy would have qualified for ERISA's Safe Harbor Provision. Thus, *Kaihlanen* appears to contradict, rather than support, Paul Revere's position. Nevertheless, to the extent that the *Kaihlanen* court held that the insured's intent to pay the premiums was relevant, I respectfully disagree.

■ Insurance policies may be governed by ERISA even where the parties had no such intent. *See Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989) (applying ERISA where employer was "not aware that the termi-

nation pay plan was governed by ERISA"). Specifically, when inquiring into compliance with particular provisions of ERISA, courts have refused to consider the intent of the parties where the relevant language of the requirement was unambiguous.

In *Lasche v. George W. Lasche Basic Profit Sharing Plan,* 111 F.3d 863 (11th Cir. 1997), Madeline Lasche signed a consent form waiving her right to benefits under her husband George's ERISA plan as required to allow his daughters to receive the benefits. She also signed an amendment to her prenuptial agreement waiving all such rights under ERISA. After George's death, Madeline sued to receive the benefits under the policy claiming that her waiver was invalid as a matter of law because her consent was not "witnessed by a plan representative or a notary public" as required by ERISA. *See* 29 U.S.C. 1055(c)(2)(A)(iii).

The daughters argued, in part, that Madeline's intent should be considered in determining whether the waiver was valid and pointed to her signatures on the prenuptial agreement and the consent form. The court held that her intent was not relevant to the inquiry because:

> Congress in enacting 29 U.S.C. § 1055(c)(2)(A) explicitly set forth certain requirements that must be followed. A person's subjective intent is irrelevant to whether these requirements were followed. In our case, the parties failed to exactly comply with the requirements of ERISA, unfortunately resulting in an outcome that may be contrary to both George's and Madeline's intent.

*Id.* at 867.

In *QuesTech, Inc. v. Hartford Accident & Indemnity Co.,* 713 F.Supp. 956 (E.D.Va. 1989), *overruled on other grounds by Adkins v. Reliance Standard Life Ins. Co.,* 917 F.2d 794 (4th Cir.1990), QuesTech purchased an accidental death and dismemberment policy for its key employees. Both the company and the employees intended that the company would receive any benefits from the policy. Nevertheless, the court held that the insurance policy was an ERISA plan because the employees were "participants" within ERISA's definition of an employee welfare benefit plan even though neither QuesTech, nor the employees had so intended. The court declined to inquire into the parties' intent because "[c]ourts should avoid this quagmire in the absence of clear legislative direction to the contrary." *Id.* at 961–62. Applying that rule to the facts before it, the court concluded that "the policy ... fits squarely within the definition of an ERISA employee welfare benefit plan. That QuesTech may have intended otherwise is immaterial." *Id.* at 962.

I read *QuesTech* and *Lasche* to hold that, in the context of ERISA, courts should not inquire into the intent of the parties, at least where the relevant statutory language is clear and unambiguous. This is consistent with the general rule of statutory interpretation. *See Estate of Cowart v. Nicklos Drilling Co.,* 505 U.S. 469, 476, 112 S.Ct. 2589, 2594, 120 L.Ed.2d 379 (1992) (applying "the basic and unexceptional rule that courts must give effect to the clear meaning of statutes as written"). That rule applies with equal force to federal regulations. *See Pennsylvania Dep't of Pub. Welfare v. United States Dep't of Health and Human Services,* 101 F.3d 939, 944 & n. 4 (3d Cir.1996) (refusing to look beyond the language of a federal regulation where "the meaning of the regulation ... is clear").

Thus, the Safe Harbor Provision's requirement that "[n]o contributions are made by an employer" must be afforded its clear meaning. *See* 29 C.F.R. § 2510.3–1(j)(1). In this case, it is undisputed that CHCC paid all premiums for the Individual Policies. These payments by the employer are inconsistent with the unambiguous language of the regulation. Therefore, I will not inquire into Morris' intent regarding these payments.

Morris has added a twist to this analysis by amending his income tax returns to operate as if he had personally paid the premiums in the first place. To permit such a retroactive restructuring of the premium payments to remove the Individual Policies from the scope of ERISA, however, would allow an insured to elect enrollment in an ERISA insurance plan and then, when ERISA threatened to preclude recovery of

benefits, retrospectively reverse the nature of the plan to come within the Safe Harbor Provision. Such a rule would permit a party to avoid, or take advantage of, various dispositive ERISA provisions, the applicability or inapplicability of which other parties may have relied upon. *See, e.g., Lasche,* 111 F.3d 863 (insured's wife took advantage of ERISA's requirements to nullify her waiver of benefits which children of insured had relied upon).

Paul Revere is thus entitled to summary judgment on the issue of ERISA's applicability to the Individual Policies. Therefore, I need not decide whether the Individual Policies were part of an overall benefit program which might independently subject them to ERISA coverage. As for the alleged accountant's error, whatever recourse Morris may have does not include the retroactive exemption of his individual insurance policies from the ERISA guidelines.

## B. The Standard of Review

Morris filed this action to recover benefits under the Group Policy and the Individual Policies. Thus, Morris seeks review of an ERISA plan administrator's denial of benefits. Paul Revere moves for summary judgment as to the appropriate standard of review for this Court to apply to the plan administrator's denial of benefits.

### 1. The Standard of Review for a Denial of Benefits by an ERISA Plan Administrator

 A federal district court ordinarily reviews the denial of ERISA benefits by a plan administrator *de novo. See Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 956–57, 103 L.Ed.2d 80 (1989); *Abnathya v. Hoffmann–La Roche, Inc.,* 2 F.3d 40, 44–45 (3d Cir.1993). Where the plan itself confers discretion on the administrator to determine eligibility for benefits, however, a district court may only reverse the administrator's decision if it was "arbitrary and capricious." *See Firestone,* 489 U.S. at 114–15, 109 S.Ct. at 956; *Abnathya,* 2 F.3d at 44–45. This is true whether the administrator's decision was based on an interpretation of the plan or on factual determinations. *Mitchell v. Eastman Kodak Co.,* 113 F.3d 433, 438 (3d Cir.1997).

"The 'arbitrary and capricious' standard is essentially the same as the 'abuse of discretion' standard." *Abnathya,* 2 F.3d at 45 n. 4. When applying this standard of review, "the district court may overturn a decision of the Plan administrator only if it is without reason, unsupported by substantial evidence or erroneous as a matter of law." *Id.* at 45.

 The application of the arbitrary and capricious standard, however, "ranges from slight to great, depending upon the dynamics of the decisionmaking process." *Brown v. Blue Cross and Blue Shield of Alabama, Inc.,* 898 F.2d 1556, 1564 (11th Cir.1990), *cert. denied,* 498 U.S. 1040, 111 S.Ct. 712, 112 L.Ed.2d 701 (1991). In particular, a district court may apply a heightened level of scrutiny to a decision afflicted with a conflict of interest. *See Id.*

In *Brown,* the Eleventh Circuit held that where the plan administrator is itself the insurance company which stands to lose money by paying benefits, the decision to deny benefits "inherently implicate[s] the hobgoblin of self-interest." *Brown,* 898 F.2d at 1568. In such a case, a heightened level of the arbitrary and capricious standard is warranted. *Brown,* 898 F.2d 1556.

This Court, in a case subsequently affirmed by the Third Circuit, has adopted the Eleventh Circuit's approach. *Rizzo v. Paul Revere Ins., Group,* 925 F.Supp. 302 (D.N.J. 1996), *aff'd,* 111 F.3d 127 (3d Cir.1997); *see also Mitchell,* 113 F.3d at 437 n. 4 (finding "no conflict of interest sufficient to justify heightened review of the Administrator's decision"); *Stout v. Bethlehem Steel Corp.,* 957 F.Supp. 673, 691 (E.D.Pa.1997) ("Because we find no other evidence of a conflict of interest, we decline to consider the Defendant's decisions under a heightened standard of review above and beyond 'arbitrary and capricious.' ") (citing *Brown* ).

Under the *Rizzo* standard, the court must apply a two-prong test to determine the validity of the administrator's decision. *See Id.* at 309–10. The *Rizzo* test "first requires *de novo* review of the plan administrator's decision in order to determine whether it is a legally correct interpretation of the relevant

plan provision. Only if the administrator's decision is 'wrong, but apparently reasonable,' does the court inquire whether the "wrong" decision was tainted by self interest." *Id.* (quoting *Brown,* 898 F.2d at 1566). Decisions which were tainted by self-interest are considered "arbitrary and capricious." *Rizzo,* 925 F.Supp. at 310.

### 2. The Standard of Review for the Group Policy

█ Paul Revere contends that the arbitrary and capricious standard of review applies to this Court's review of the plan administrator's denial of benefits under the Group Policy. Morris agrees. Plaintiff's Memorandum at 17. The Group Policy clearly confers broad discretion on the plan administrator to determine eligibility for benefits. *See* Defendant's Ex. A (stating in part that Paul Revere "has full, final, complete, conclusive, and exclusive discretion to determine eligibility for coverage and benefits under the Group Policy"). Therefore, the arbitrary and capricious standard of review is appropriate.

Morris does not argue that the Group Policy should be governed by the heightened standard described in *Rizzo* which coincidentally involved Paul Revere. This Court, however, must apply the correct legal standard. Here, as in *Rizzo,* "Paul Revere's dual role as ... claims administrator and as the issuing insurance company creates what was described in *Brown* as the 'hobgoblin of self-interest.'" *Rizzo,* 925 F.Supp. at 309; *compare Abnathya,* 2 F.3d at 45 n. 5 (no conflict of interest exists where administrator "incurs no direct expense as a result of the allowance of benefits, nor does it benefit directly from the denial or discontinuation of benefits"). The present action involves the same relevant facts as *Rizzo* and I find that Paul Revere's conflict of interest necessitates the stricter application of the arbitrary and capricious standard.

### 3. The Standard of Review for the Individual Policies

█ Morris initially asserts that ERISA does not govern the Individual Policies and that state law thus governs this Court's review of the denial of benefits. In light of the Court's finding to the contrary, I look once again to ERISA for the appropriate standard of review. Anticipating this result, Morris urges the Court to apply the *Rizzo* standard to the denial of benefits under the Individual Policies.

Both parties apparently assume that the "arbitrary and capricious" standard applies. As stated above, however, the Court will only apply that standard if the plan confers discretion on the administrator; otherwise, the Court will exercise plenary review. *Firestone,* 489 U.S. at 114–15, 109 S.Ct. at 956; *Abnathya,* 2 F.3d at 44–45. The parties have not pointed to any pertinent language in the Individual Policies regarding Paul Revere's discretion to deny benefits, nor has the Court located such language. *See* Plaintiff's C, E, G, I, K. Therefore, Paul Revere's motion will be denied as to this issue and the denial of benefits under the Individual Policies will be reviewed *de novo.*

### C. Record on Review

█ Paul Revere moves for summary judgment as to the factual record upon which this Court may base its review of the plan administrator's decision. Specifically, Paul Revere asserts that this Court's review of the denial of benefits under the Group Policy must be limited to the same record available to the administrator. Morris concedes this point. Plaintiff's Memorandum at 18. This is appropriate. *See Stout,* 957 F.Supp. at 691 ("When reviewing a denial of benefits under the arbitrary and capricious standard, we are behooved to consider only the evidence available to the Plan Administrator at the time the decision was made.").

█ The Individual Policies, however, are not subject to the deferential arbitrary and capricious standard of review. Where the decision of an ERISA plan administrator is reviewed *de novo* by the Court, as with the Individual Policies, the record on review may be supplemented. *See Luby v. Teamsters Health, Welfare, and Pension Trust Funds,* 944 F.2d 1176, 1184–85 (3d Cir.1991). However, the Third Circuit "does not require that a district court conduct a *de novo* evidentiary hearing or full trial *de novo* in making a determination between ERISA claimants. If the record on review is sufficiently devel-

oped, the district court may, in its discretion, merely conduct a *de novo* review of the record of the administrator's decision, making its own independent benefit determination." *Id.* Therefore, Paul Revere's motion regarding the record to be reviewed will be granted as to the Group Policy, but denied as to the Individual Policies.

### D. Entitlement to Benefits

■ Paul Revere moves for summary judgment as to Morris' entitlement to benefits under the Group Policy. Because I review the denial of benefits under the Group Policy by the standard articulated in *Rizzo,* I must first determine *de novo* whether the administrator applied a correct interpretation of the plan. *See supra* Part III.B.2. I conclude, however, that genuine issues of material fact preclude this determination at the summary judgment stage of this litigation.

■ "Under ERISA, our construction of [an] insurance contract is governed not by state insurance law rules but by principles of federal law." *Turner v. Safeco Life Ins. Co.,* 17 F.3d 141, 145 (6th Cir.1994). Federal law requires that "straightforward language in an ERISA-regulated insurance policy should be given its natural meaning." *Burnham v. Guardian Life Ins. Co. of America,* 873 F.2d 486, 489 (1st Cir.1989); *see Kaufman v. Provident Life and Casualty Ins. Co.,* 828 F.Supp. 275, 283 (D.N.J.1992), *aff'd,* 993 F.2d 877 (3d Cir.1993).

The Group Policy is an occupational disability policy which covers Morris if "he is unable to pursue the particular occupation in which he was previously engaged." *Oglesby v. Penn Mutual Life Ins., Co.,* 877 F.Supp. 872, 879 (D.Del.1994). "[T]he occupation to which such contracts refer in promising indemnity when the insured is unable to carry on an occupation refers to the occupation which the insured was carrying on at the time he was insured." *Kaufman,* 828 F.Supp. at 284.

To be eligible for benefits under the Group Policy, Morris must have been a "full time"

employee of CHCC. *See* Mat. Facts at 3. The Group Policy defines "full time" as the "employer's normal work week of at least thirty hours." *See Id.* at ¶ 4. I must give that phrase its obvious meaning. *See Burnham,* 873 F.2d at 489 (holding that definition of full time as "work[ing] at least 30 hours per week" was "clear, precise, and definite"). According to his application for benefits, Morris worked thirty-six hours per week at CHCC performing chiropractic work. *See* Defendant's Ex. D, Exhibit 1 at 4; Mat. Facts at ¶ 16. That allegation is sufficient to preclude a determination, at the summary judgment stage, that the administrator's decision was correct.

Paul Revere's alternative ground for summary judgment is equally unavailing. Paul Revere claims that Morris was able to perform his "important duties" because his "important duties" were administrative, rather than chiropractic. Morris, however, alleges that he performed manual chiropractic adjustments "daily." Mat. Facts at ¶ 17. On his application for benefits Morris listed his first duty, "in order of importance," as performing "[m]anual chiropractic adjustments" at CHCC. *See Id.* at ¶ 16. In 1994, Morris saw 6,972 patients. *Id.* at ¶ 37–38. Morris has thus presented sufficient evidence to create a material issue of fact and, accordingly, Paul Revere is not entitled to summary judgment on this issue.[5]

## IV. MORRIS' MOTION FOR PARTIAL SUMMARY JUDGMENT

■ Morris moves for summary judgment as to his entitlement to benefits under the Individual Policies. Morris contends that he was disabled under the Individual Policies because he could no longer perform his chiropractic duties.

The Individual Policies define "total disability" in terms of "the important duties of your regular occupation." Plaintiff's C, E, G,

---

5. The Group Policy defines a "total disability" as when the employee "cannot perform *any* of the important duties of [his or her] own occupation." Defendant's Ex. A (emphasis added). Paul Revere, however, does not contend that this precludes benefits if Morris can perform one or more of the important duties of his occupation.

I, K.[6] In this context, Morris again argues that his "important duties" were chiropractic and Paul Revere again counters that they were administrative.

Morris only saw patients on an "as needed" basis at CHCC. *See* Mat. Facts at ¶ 39. In 1994, he spent the majority of his time at Statewide. *See Id.* at ¶¶ 35–36. In that one-year period, Morris saw only 311 patients at CHCC, while the full-time chiropractor at CHCC saw 5,009. *See Id.* at ¶ 37. In addition, Morris had substantial non-clinical duties. As Morris himself testified:

> One, I have a real estate company. The buildings I'm in, I have a therapy and rehab company, I'm responsible for a general partner; two, I'm in charge of Statewide in Cherry Hill to make sure—I go out with different attorneys, I go out to lunch with them, I go out to dinner, I do marketing. I look for prospective offices to open up.
>
> I'm active in the state society, I'm on the board—on local boards and state boards so I'm tied up with that politically. So that occupies my time.
>
> Besides overseeing the office which I do oversee how the daily members are coming in, I'm also—most of the these doctors and patients are seen by referrals from private patients who I do not see and see another doctor, they know I'm not there. I will refer the patients to the office so one of my doctors can see them. I even go out marketing, doing things, bring patients in the office.

*Id.* at ¶ 43 (quoting Morris Dep. at 77–78).

Morris' motion for summary judgment must be denied because Paul Revere has offered evidence sufficient to create a material issue of fact regarding Morris' "important duties." *See Oglesby*, 877 F.Supp. at 883 ("Because there is an abundance of genuine issues of material fact relating to plaintiff's regular occupation under the disability insurance policy, this issue cannot be disposed of at summary judgment.").

6. The definitions also require that Morris be "under the regular and personal care of a physician." *Id.* Paul Revere concedes that Morris

## V. MORRIS' MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT

Morris moves for leave to amend the complaint in three respects. For the following reasons, the Court grants leave to file an amended complaint which will include additional allegations, consistent with this Opinion, against Paul Revere, but denies leave to join additional proposed defendants not previously named as parties to this action.

### A. Denial of Benefits under the Group Policy was Arbitrary and Capricious

Morris moves for leave to amend the complaint to allege that the plan administrator's denial of benefits under the Group Policy was arbitrary and capricious. Paul Revere does not object to such an amendment. Defendant's Reply Memorandum at 8. Pursuant to Fed.R.Civ.P. 15(a), Morris' motion for leave to amend the complaint will be granted as it pertains to this issue.

### B. Denial of Benefits under the Individual Policies was Arbitrary and Capricious

Morris also moves for leave to amend the complaint to allege that the denial of benefits under the Individual Policies was arbitrary and capricious in the event that the Court applies the heightened standard of review to the Individual Policies. Paul Revere does not object to such an amendment. Defendant's Reply Memorandum at 8. I have already determined that the denial of benefits under the Individual Policies will be reviewed *de novo*. *See supra* Part III.B.3. Therefore, Morris' motion to amend the complaint in this respect will be dismissed as moot.

### C. Joinder of Additional Defendants

■■■ Morris moves to amend the complaint to add his accountant, the accounting firm and several John Doe defendants employed by the accounting firm (collectively the "Accountants") as additional defendants. Morris seeks to allege professional malpractice against the Accountants based on their failure to charge the premium payments to him rather than to CHCC as he claims to

satisfied that requirement. *See* Defendant's Reply Memorandum at 9 n. 2.

have instructed the Accountants. Paul Revere does not oppose such an amendment. Defendant's Reply Memorandum at 8.

■ In support of this motion, Morris cites New Jersey's Entire Controversy Doctrine. That rule generally "seeks to assure that all aspects of a legal dispute occur in a single lawsuit." *Olds v. Donnelly*, 150 N.J. 424, 431, 696 A.2d 633 (1997). To that end, "the entire controversy doctrine bars a state court suit against parties which could have and should have been joined in a previous federal action." *Gross v. Cohen DuFour & Associates*, 273 N.J.Super. 617, 621, 642 A.2d 1074 (Law Div.1993).

■ The Entire Controversy Doctrine, however, cannot bar a judgment rendered by a federal court in a case where jurisdiction was premised upon a federal question. *See Fioriglio v. City of Atlantic City*, 963 F.Supp. 415, 424 (D.N.J.1997) ("Uniform authority dictates that federal law governs the issue and claim preclusion effects of a federal judgment in a federal question case."); *see also Mortgagelinq Corp. v. Commonwealth Land Title*, 142 N.J. 336, 338, 662 A.2d 536 (1995) ("we do not seek to export our procedural requirements of party joinder"); *Watkins v. Resorts International Hotel & Casino, Inc.*, 124 N.J. 398, 411–12, 591 A.2d 592 (1991) ("the preclusive effect of the judgment is a function of the procedures of the federal court which rendered it"). This Court has federal question jurisdiction over this action pursuant to the jurisdictional provisions of ERISA. *See* 29 U.S.C. § 1132(e). Therefore, the Entire Controversy Doctrine will not apply to a judgment rendered in this case.[7]

■ Instead, Rule 20 of the Federal Rules of Civil Procedure governs the permissive joinder of parties in this action.[8] That Rule provides in relevant part:

> All persons ... may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action.

Fed.R.Civ.P. 20(a) (emphasis added).

■ Thus, "the Court's discretion is limited by the two prerequisites of the rule: first, a right to relief must be asserted which arose from the same transaction or occurrence and, second, a question of law or fact common to all the parties must arise in the action." *Horton Co. v. International Telephone & Telegraph Corp.*, 85 F.R.D. 369, 371 (W.D.Pa.1980); *see Site Microsurgical Systems, Inc. v. Cooper Companies, Inc.*, 797 F.Supp. 333, 336 n. 6 (D.Del.1992). "Although this joinder provision should be construed liberally, both parts of this test must be satisfied." *Gruening v. Sucic*, 89 F.R.D. 573, 574 (E.D.Pa.1981) (citations omitted); *see Mesa Computer Utilities, Inc. v. Western Union Computer Utilities, Inc.*, 67 F.R.D. 634, 636 (D.Del.1975).

■ The second prong of that test "does not require precise congruence of all factual and legal issues; indeed, joinder may be permissible if there is but one question of law or fact common to the parties." *Mesa Computer*, 67 F.R.D. at 637. In this case, however, no such common question of law or fact exists to satisfy the requirements of Rule 20.

---

7. Moreover, even if the Entire Controversy Doctrine could apply to a judgment in this action, it would not jeopardize Morris' ability to maintain a subsequent suit against the Accountants in New Jersey state court because I have concluded that federal rules of joinder prohibit Morris from joining the Accountants in this action. *See Kaselaan & D'Angelo Associates, Inc. v. Soffian*, 290 N.J.Super. 293, 301 n. 1, 675 A.2d 705 (App.Div. 1996) ("the ultimate applicability of the entire controversy doctrine may turn on ... whether any parties who were not joined in the first [federal] action were subject to joinder therein"); *see also Cogdell v. Hospital Center at Orange*, 116

N.J. 7, 28, 560 A.2d 1169 (1989) ("unfairness to litigants [arising from the Entire Controversy Doctrine] ... can be eliminated or at least minimized by a trial court possessed of the discretion to excuse joinder"); *compare Mortgagelinq*, 142 N.J. at 338, 662 A.2d 536 (holding that Entire Controversy Doctrine applies "when a party deliberately chooses to fragment litigation").

8. Morris does not argue, nor could he, that the accountants must be joined as necessary and indispensable parties under Fed.R.Civ.P. 19.

Morris seeks to add causes of action for professional malpractice against the Accountants. *See* Proposed Amended Complaint, Plaintiff's Ex. W. The essence of these allegations is that the Accountants were instructed to charge the premium payments for the Individual Policies to Morris, but instead charged them to CHCC. Morris asserts that, had the Accountants performed their duty to him, the Individual Policies would have fallen within the Safe Harbor Provision and beyond the scope of ERISA.

I have held today, however, that ERISA's applicability to the Individual Policies was determined by CHCC's actual payment of the premiums and that, as a matter of law, Morris' professed intent to pay them himself is irrelevant. *See supra* Part III.A.2. Thus, the undisputed fact that the payments were charged to CHCC rather than to Morris was relevant, but the conduct creating that situation (and whether or not it amounted to professional malpractice) has no bearing on the principal issues in this case and consequently fails to implicate any common questions of law or fact. Therefore, Rule 20 limits this Court's discretion to join the Accountants as defendants, and Morris' motion for leave to file an amended complaint alleging professional malpractice against the Accountants must be denied.[9]

## VII. CONCLUSION

For the reasons set forth above, Paul Revere's motion for partial summary judgment will be granted in part and denied in part, and Morris' motion for partial summary judgment will be denied. In addition, Morris' motion for leave to file an amended complaint will be granted in part and denied in part. The Court will enter an appropriate order.

[9.] Moreover, I would not exercise supplemental jurisdiction over the malpractice claims even if joinder of the parties were permitted. *See Fitzgerald v. Alleghany Corp.*, 882 F.Supp. 1433, 1435 (S.D.N.Y.1995) ("federal courts are not obliged to exercise supplemental jurisdiction"); *Lyon v. Whisman*, 45 F.3d 758, 762 n. 8 (3d Cir.1995) (implying that Third Circuit would not follow courts holding that 28 U.S.C. § 1367(a) mandates the exercise of supplemental jurisdiction).

## ORDER

This matter having come before the Court on the motion of Defendant, Paul Revere Life Insurance Company, for partial summary judgment and on the motions of Plaintiff, Calvin Morris, for partial summary judgment and for leave to file an amended complaint, Douglas F. Johnson, Esq. and Samantha Pettine, Esq., Earp, Cohn & Pendery, appearing on behalf of Defendant, and Mark A. Rinaldi, Esq., Morelli & Rinaldi, P.C., appearing on behalf of Plaintiff; and,

The Court having considered Defendant's motion and the papers filed therewith, and Plaintiff's motion and the papers filed therewith, for the reasons set forth in the Court's OPINION, filed concurrently with this ORDER;

IT IS, on this 12th day of November, 1997, hereby:

A. ORDERED that Defendant's motion for partial summary judgment is:

1. GRANTED as to the applicability of the Employee Retirement Income Security Act to the Group Policy;

2. GRANTED as to the applicability of the Employee Retirement Income Security Act to the Individual Policies;

3. GRANTED as to the applicability of the "arbitrary and capricious" standard of review to the Group Policy;

4. DENIED as to the applicability of the "arbitrary and capricious" standard of review to the Individual Policies;

5. GRANTED as to the limitation of the Court's review under the Group Policy to the administrative record;

6. DENIED as to the limitation of the Court's review under the Individual Policies to the administrative record; and,

Among other concerns, the apparent necessity of severing and trying the malpractice claims separately in this case would virtually nullify any considerations of judicial economy. See Fed. R.Civ.P. 20(b); *Mortgagelinq*, 142 N.J. at 344–45, 662 A.2d 536 ("Judicial economy and efficiency—the avoidance of waste and delay—remain constants in the application of the entire controversy doctrine.").

7. DENIED as to Plaintiff's entitlement to benefits under the Group Policy; and,

B. IT IS FURTHER ORDERED that Plaintiff's motion for partial summary judgment is DENIED; and,

C. IT IS FURTHER ORDERED that Plaintiff's motion for leave to file an amended complaint is:

1. GRANTED as to allegations that the denial of benefits under the Group Policy was arbitrary and capricious;

2. DISMISSED as moot as to allegations that the denial of benefits under the Individual Policies was arbitrary and capricious; and,

3. DENIED as to joinder of additional parties.