**Edna Jane BICKEL**

v.

**LONG TERM DISABILITY PLAN OF WESTERN ELECTRIC.**

Civ. A. No. 81–5114.

United States District Court,
E. D. Pennsylvania.

June 22, 1982.

James M. Potter, Donald Smith, Reading, Pa., for plaintiff.

Mark S. Dichter, Morgan, Lewis & Bockius, Philadelphia, Pa., for defendant.

### MEMORANDUM AND ORDER

TROUTMAN, District Judge.

This action arises under the Employment Retirement Income Security Act, 29 U.S.C. § 1001 *et seq.* (ERISA) and requires a determination whether defendant, Long Term Disability Plan of Western Electric (Plan) improperly denied plaintiff disability benefits. Both parties have moved for summary judgment pursuant to Fed.R.Civ.P. 56.

Defendant is an "Employee Welfare Benefit Plan", 29 U.S.C. § 1002(1), established pursuant to the terms of a collective bargaining agreement between Western Electric Company—Reading Works (Western Electric) and the International Brotherhood of Electrical Workers, AFL–CIO Local Union No. 1898. The Plan provides long-term disability benefits [1] to eligible employees of Western Electric, the "plan sponsor", 29 U.S.C. § 1002(16)(B). It entered into an administration agreement with the Equitable Life Assurance Society (Equitable) wherein Equitable administers the plan and acts as claims adjuster. See 29 U.S.C. § 1133; 29 C.F.R. § 2560.503. Hence, for

---

1. The test for disability benefit eligibility is whether an individual is incapable of performing work which pays 50% of pre-disability income and whether such a job opportunity is actually available. Moreover, a finding of disability eligibility requires that claimant suffer from a non-occupational illness or disease which persists for more than fifty-two weeks.

present purposes, the actions of Equitable are attributable to the Plan.

Plaintiff, Edna Bickel, began "active status" employment at Western Electric's Reading facility in 1968. For one year, from mid-November 1976 to mid-November 1977, plaintiff received short-term disability benefits from a self-insured plan operated by Western Electric. Upon exhausting her short-term disability benefits, plaintiff became eligible for and began receiving from defendant, long-term disability benefits for a period of three months. Plaintiff then returned to work for two months, until April 9, 1978, when she again began to experience back problems. Three days thereafter plaintiff underwent surgery for a second lumbar laminectomy. Western Electric then granted plaintiff a three-month disability leave of absence which expired in mid-July 1978 and was extended until the following October.[2] Upon returning from disability leave, employees are not guaranteed a job; rather, Western Electric attempts to place such employees into vacant positions subject to its obligations under the collective bargaining agreement.

In any case, plaintiff returned to work in mid-October 1978. She was found fit for work by the company physician so long as she refrained from lifting weights in excess of twenty pounds and further refrained from standing. Within a month plaintiff began missing work due to back pain and was again examined by the company physician. He found that she was disabled and, in mid-November 1978, plaintiff ceased work for Western Electric and became a recipient of long-term disability benefits from the Plan.

Twenty-two months later, apparently under the misapprehension that her disability benefits would lapse if she did not attempt to return to work, plaintiff wrote to defendant that

I have been released from my doctors to return to work as of September 8, 1980.[3] During the time of my physical disability your Co. was very beneficial to me.

Upon receipt of this letter, the Plan determined that plaintiff was no longer disabled; Western Electric then also informed her that her request for reinstatement had been denied due to a lack of vacancies.

Within five days, on September 10, 1980, plaintiff wrote to the Plan seeking once again long-term disability benefits. After receipt of a number of reports from medical examinations, defendant's claim adjuster determined that plaintiff was not disabled in that she was capable of performing the requirements of a job where base rate of pay was 50% of plaintiff's former base pay and that such jobs, e.g., radio dispatcher and telephone operator, were available. Defendant informed plaintiff of its decision on February 3, 1981, and that she was entitled to submit a written request for a review of the benefit denial. 29 U.S.C. § 1133.

Shortly thereafter, on February 21, 1981, plaintiff requested a review of the Claims Administrator's benefit denial. Plaintiff, now represented by counsel, agreed to submit to a neurologic examination and electromyleogram conducted by an independent medical doctor. Defendant's medical consultant reviewed these tests along with updated reports from plaintiff's treating physician and plaintiff's entire medical file (containing approximately two hundred pages) and determined that plaintiff was not totally disabled from any and all occupations. Accordingly, the Plan affirmed its prior ruling that benefits were properly terminated; plaintiff was so informed on June 23, 1981. Thereafter, plaintiff instituted suit seeking a review of defendant's conclusion that she was not disabled.

2. While on disability leave of absence, plaintiff continued to receive specified insurance and other benefits from Western Electric.

3. Plaintiff's physician wrote to defendant four months later, on January 12, 1981, that he had,

in fact, examined her on September 2, 1980. The letter from her doctor states at the time she was examined she was "given permission to *attempt* to return to her occupation". (emphasis added)

■ The standard of review which we apply to the Plan's decision is whether defendant acted in an arbitrary and capricious manner. *Rosen v. Hotel and Restaurant Employees & Bartenders Union*, 637 F.2d 592, n.5 (3d Cir.), *cert. denied*, —— U.S. ——, 102 S.Ct. 398, 70 L.Ed.2d 213 (1981); *Paris v. Profit Sharing Plan for Employees of Howard B. Wolf, Inc.*, 637 F.2d 357, 362 (5th Cir.), *cert. denied*, —— U.S. ——, 102 S.Ct. 140, 70 L.Ed.2d 117 (1981); *Cawley v. NMU Pension and Welfare Plan*, 457 F.Supp. 301, 303 (S.D.N.Y.1978). *See also, Rosenthal v. National Life Insurance Co.*, 486 F.Supp. 1018 (S.D.N.Y.1980). Plaintiff seeks to add to this standard considerations of whether defendant acted in bad faith. *Glover v. South Central Bell Telephone Co.*, 644 F.2d 1155, 1157 (5th Cir. 1981).[4] Although we believe that the appropriate standard in the Third Circuit is the "arbitrary and capricious" test articulated in *Rosen, supra*, application of either test would yield the same legal conclusion in the case at bar.

Specifically, review under the "arbitrary and capricious" standard is "narrow" and requires a determination whether the decision was based upon a "consideration of the relevant factors and whether there has been a *clear error* of judgment". *Bowman Transportation, Inc. v. Arkansas-Best Freight System, Inc.*, 419 U.S. 281, 285, 95 S.Ct. 438, 442, 42 L.Ed.2d 447 (1974) (quotations omitted; emphasis added). Review under this standard requires that the challenged decision remain intact unless it is "not rational", *Federal Communications Commission v. National Citizens Committee for Broadcasting*, 436 U.S. 775, 803, 98 S.Ct. 2096, 2116, 56 L.Ed.2d 697 (1978), or "unwarranted in law or without justification in fact". *Goodman v. United States*, 518 F.2d 505, 511 (5th Cir. 1975) (quotation omitted). *Accord, Baltimore and Ohio Chicago Terminal Ry. Co. v. U. S.*, 583 F.2d 678, 685 (3d

Cir. 1978), *cert. denied sub nom., Aliquippa and Southern Ry. Co. v. United States*, 440 U.S. 968, 99 S.Ct. 1520, 59 L.Ed.2d 784 (1979) (arbitrary and capricious decisions must be "rationally supported"); *American Consumer, Inc. v. United States Postal Service*, 427 F.Supp. 589, 592 (E.D.Pa.1977).

■ Application of this standard requires affirming the Plan's decision that plaintiff is not "disabled". The affidavit of Dr. Klein specifically states that he considered plaintiff's entire medical file which contained a wide spectrum of reports regarding her health. Additionally, John DeSanctis avers that he obtained plaintiff's complete medical file, consisting of over two hundred pages, and furnished them to Dr. Klein. Upon review of portions thereof submitted by the parties, we are unable to state that the Plan's determination that plaintiff is no longer disabled is a "clear error of judgment" or that it is "not rational".

Application of the "bad faith" test as employed in *Glover v. South Central Bell Telephone Co., supra*, also fails to support plaintiff. That test requires plaintiff to show that the Plan

> treated similarly situated employees differently, imposed ... unreasonable requirements upon [plaintiff], refused to consider evidence favorable to the claim, or in any way grossly erred in its exercise of judgment.

*Glover v. Southern Central Bell Telephone Co.*, 644 F.2d at 1158. Plaintiff has been unable to make this showing and, indeed, has not even alleged any disparate treatment.

Finally, we are neither unmindful nor unsympathetic to plaintiff's plight. Her essential argument, however, is that, upon a review of the medical reports, the Plan arrived at the wrong conclusion. On this record we are simply unable to upset the Plan's determination; we may not substi-

---

**4.** Interestingly, *Glover* relying on *Louisiana* law reviewed defendant's conduct under the "arbitrary and capricious or bad faith" test. *But see*, 29 U.S.C. § 1144. *Glover* did not, however, specifically signal an expansion of the "arbitrary and capricious" standard previously announced by the Fifth Circuit in *Paris v. Profit Sharing Plan for Employees of Howard B. Wolf, Inc.*, 637 F.2d 357, 362 (5th Cir.), *cert. denied*, —— U.S. ——, 102 S.Ct. 140, 70 L.Ed.2d 117 (1981).

tute our judgment for defendant's reasoned conclusion. The recent observation that "our legal system ... is not premised on the personal view of justice by individual judges, notwithstanding the frequency with which such charge is leveled by our critics" is particularly apt here. *O'Brien v. Eli Lilly & Co.*, 668 F.2d 704, 712 (3d Cir. 1981) (Sloviter, J.) (concurring). Hence, an order will issue granting defendant's motion for summary judgment and denying plaintiff's.