**Morrill JESTINGS, Plaintiff, Appellee,**

v.

**NEW ENGLAND TELEPHONE AND TELEGRAPH COMPANY, et al., Defendants, Appellants.**

**No. 84–1509.**

United States Court of Appeals, First Circuit.

Argued Oct. 5, 1984.

Decided March 21, 1985.

S. Mason Pratt, Jr., Portland, Maine, with whom Jeffrey D. Curtis and Pierce, Atwood, Scribner, Allen, Smith & Lancaster, Portland, Maine, were on brief, for New England Tel. and Tel. Co. and Prudential Ins. Co. of America.

Eugene C. Coughlin, Bangor, Maine, with whom Clark P. Thompson and Vafiades, Brountas & Kominsky, Bangor, Maine, were on brief, for plaintiff, appellee.

Before CAMPBELL, Chief Judge, BREYER, Circuit Judge, and WEIGEL,* Senior District Judge.

BREYER, Circuit Judge.

Morrill Jestings, the appellee, worked for New England Telephone & Telegraph Company ("NET"). He developed a heart problem, and in May 1980 he applied for long

* Of the Northern District of California, sitting by designation.

term disability benefits. Prudential Insurance Company, which administers NET's Long-Term Disability Benefits Plan ("the plan"), denied Jestings benefits because it believed he was physically capable of working, if not at his present job, at least at other jobs. Jestings sued NET and Prudential claiming that Prudential acted arbitrarily in denying him benefits in violation of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001 *et seq.* *See Palino v. Casey,* 664 F.2d 854, 858 (1st Cir.1981) (arbitrary action forbidden under ERISA). The district court interpreted the language of the benefit plan to require the payment of benefits unless there was another job paying at least half Jestings' present wage "available" to Jestings. The court held that Prudential had acted arbitrarily in failing to adequately examine whether or not NET had offered Jestings such a job (the matter was controverted) and the court ordered Prudential to pay Jestings benefits. We agree with the appellants, NET and Prudential, that the plan does not impose a "job availability" requirement, and we reverse the district court.

The relevant language in the plan reads as follows:

"Disability" during the period subsequent to the Waiting Period shall mean sickness or injury, other than accidental injury arising out of and in the course of employment by the Company, which prevents the employee from engaging in any occupation or employment, for which the employee is qualified, or may reasonably become qualified, based on training, education or experience. An employee shall continue to be considered disabled if deemed to be incapable of performing the requirements of a job other than one whose rate of pay is less than 50% of the employee's Base Pay at the time the disability commenced. However, the benefits payable in Section D shall not, when added to the amount of wages of such job, exceed 75% of Base Pay.

Prudential argues that this language allows it to deny benefits to one physically *capable* of working at a comparably-paying job (*i.e.,* a job paying at least 50 percent of the prior wage) even if no such job is actually made available to the employee. We are legally bound to accept Prudential's argument.

■ The law in this circuit, as in other circuits, is that

"[w]here both the trustees of a pension fund and a rejected applicant offer rational, though conflicting, interpretations of plan provisions, the trustees' interpretation must be allowed to control." *Miles v. New York State Teamsters Conference Pension and Retirement Fund Employee Benefit Plan,* 698 F.2d 593, 601 (2d Cir.), *cert. denied* [——] U.S. [——], 104 S.Ct. 105, 78 L.Ed.2d 108 (1983); *see also Ponce v. Construction Laborers Pension Trust for Southern California,* 628 F.2d [537] at 542 [ (9th Cir.1980) ] ("It is for the trustees, not judges, to choose between various reasonable alternatives."); *cf. Palino v. Casey,* 664 F.2d 854, 858 (1st Cir.1981) ("In judging the actions taken by trustees in the course of managing an employment benefit plan, our inquiry is limited to determining whether the actions were arbitrary and capricious in light of the trustees' responsibility to all potential beneficiaries."); *Rueda v. Seafarers International Union of North America,* 576 F.2d 939, 942 (1st Cir.1978) ("Unless the trustees' interpretation of the plan is arbitrary and capricious, or without rational basis, it may not be disregarded."). *Govoni v. Bricklayers, Masons and Plasterers International Union, Local No. 5 Pension Fund,* 732 F.2d 250, 252 (1st Cir. 1984).

■ In this case, the language of the plan will bear the interpretation that Prudential places upon it. The first sentence speaks of a "sickness or injury" that "prevents the employee from engaging in any occupation ... for which the employee is qualified...." One could reasonably say that "lack of a vacancy," not sickness, *prevents* an employee from working when the employee is physically able to work, but no

job is available. The second sentence adds that the employee is "disabled if deemed to be incapable of performing" comparably-paid jobs (defined as those paying at least 50 percent of the prior wage). This sentence says nothing of job availability, and the word "incapable" normally refers to an ability or capacity, not an opportunity.

Moreover, we cannot say that Prudential's interpretation of the language is unreasonable in light of the plan's apparent purposes. The Preamble to the plan says that its objective is to protect the employee "during periods of extended disability," arguably suggesting that it focuses exclusively upon the employee's physical condition. Disability insurance plans that look solely to the employee's health and not to job availability are by no means unusual. The best known of such plans is the federal Social Security program, which provides for compensation only when a beneficiary is too disabled to hold any job existing anywhere in the country, whether or not such a job is actually available to the beneficiary, 42 U.S.C. § 423(d)(2)(A). *See Lopez Lopez v. Secretary of Health, Education and Welfare*, 512 F.2d 1155, 1157 (1st Cir. 1975) ("It is not necessary that the Secretary demonstrate that a particular claimant would actually be hired, or even that there is a realistic chance of his being so.") *See generally* Liebman, *The Definition of Disability in Social Security and Supplemental Security Income: Drawing the Bounds of Social Welfare Estates*, 89 Harv.L.Rev. 833 (1976). We are not aware of any language in ERISA that forbids employers or employees from buying insurance of this type. *Cf. LeFebre v. Westinghouse Electric Corp.*, 549 F.Supp. 1021, 1024 (D.Md.1982) (discussing hypothetical restrictive plan requiring proof that employee cannot engage in any work for which he is trained, regardless of pay), *rev'd on other grounds*, 747 F.2d 197 (4th Cir.1984). One cannot, then, say that Prudential is unreasonable in reading the plan's language as creating this type of pure disability insurance. Nor is there any indication that Prudential has interpreted the words "incapable of performing ... a

job" in a far-fetched manner, by, say, arguing that Jestings is disqualified because he could perform a job existing, for example, only in Hawaii. Moreover, unlike the district court, we do not read *Bickel v. Long Term Disability Plan of Western Electric*, 541 F.Supp. 685 (E.D.Pa.1982) as supporting Jestings' claim. Jestings correctly notes that the *Bickel* court required that a comparably-paying job be available before benefits could be denied. But the carrier and apparently the plan language in *Bickel* were different from those here. In *Bickel*, the carrier itself evidently said that the plan required the job to be available.

Finally, Jestings suggests that Prudential has, in effect, created a new interpretation of the plan for this litigation—that its "true" interpretation includes an "availability" requirement. This argument, however, was not made below and its support arises only out of the fact that a Prudential employee, Elaine Van Lieu, had made some effort to assure herself that Jestings had in fact been offered a job before declaring him ineligible. Such an effort, however, is also fully consistent with a desire for assurance that Jestings was not medically disabled—or with a personal desire or hope for a "happy ending" to Jestings' story. We cannot accept Jestings' argument that Van Lieu's effort showed both a more generous official eligibility standard of "job availability" and a simultaneous failure to live up to that standard. (Indeed, Van Lieu specifically testified that "we are not an employment agency," strongly suggesting the absence of a "job availability" requirement.) In any event, as between any ambiguous actions of an employee and the plain assertions of Prudential—through its agents and counsel—in litigation, the latter represent the more authoritative position of the carrier. Jestings was, of course, free to call witnesses, including plan, union, or employer officials in an effort to establish that the actual meaning of the language was other than what Prudential's counsel asserted. We write here simply on the basis of the record as we find it.

In sum, since it is up to the plan's administrators, not the courts, to "choose be-

tween various reasonable alternatives," *Ponce v. Construction Laborers Pension Trust for Southern California,* 628 F.2d 537, 542 (9th Cir.1980), we must accept Prudential's interpretation of the plan's requirements; we cannot impose a requirement upon the carrier that, as a condition of denying compensation, the employer must ensure the availability of an alternative job.

Once we accept Prudential's interpretation, Jestings' claim dissolves, for Prudential had considerable evidence that Jestings was able to perform a comparably-paying job. For one thing, Jestings' initial medical report says that he can perform "medium manual activity" and that he is not "totally disabled in his job or for any other work"; and Jestings' doctor told Prudential that he could perform light work that did not require heavy physical exertion, such as lifting or climbing telephone poles. For another thing, it is undisputed that Prudential knew that Jestings could perform various other jobs at NET that paid at least 50 percent of Jestings' prior pay, although there is disagreement about whether NET actually offered such a job to Jestings.

For these reasons, the judgment of the district court is

*Reversed.*