Belcher v. Hewlett-Packard Co.       CV-96-529-JD  12/23/97

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE

<u>James Belcher</u>

       v.                              Civil No. 96-529-JD

<u>Hewlett-Packard Company</u>

O R D E R

The plaintiff, James Belcher, brought this action pursuant
to Section 502(a)(1)(B) of the Employee Retirement Income
Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B),
against the defendant, Hewlett-Packard Company Employee Benefits
Organization Income Protection Plan ("plan"), for the recovery of
long-term disability benefits.  Before the court are the
following motions:  the defendant's motion for summary judgment
pursuant to Fed. R. Civ. P. 56 (document no. 19); the plaintiff's
motion for summary judgment pursuant to Fed. R. Civ. P. 56
(document no. 25); and the defendant's motion to strike the
plaintiff's jury demand (document no. 31).

<u>Background</u>[1]

The plaintiff was employed as a learning products specialist

---

[1]Both sides have sought summary judgment in this case.  The
denial of a long-term disability benefit award in situations
where the plan administrator is granted discretion in determining
benefits eligibility will be reversed by the court only if it is
arbitrary and capricious.  <u>See</u> section I <u>infra</u>.  Therefore, the
court summarizes the evidence in the record that provides a basis
for the defendant's decision to deny long-term benefits and
examines first the defendant's motion for summary judgment.  In
doing so, it considers genuinely disputed material facts in the
light most favorable to the plaintiff.

by the Hewlett-Packard Company ("HP"), the sponsoring employer of the defendant plan. The plan, regulated by ERISA, 29 U.S.C. §§ 1001-1461, makes available certain disability benefits to HP employees who are plan members. The plan is entirely funded by HP and administered pursuant to a service contract with an independent claims administrator, Voluntary Plan Administrators ("VPA").

To qualify for disability benefits, a member of the plan must be "totally disabled." A member is "totally disabled" or has a "total disability" within the meaning of the plan if

> (i) [d]uring the first thirty-nine (39) weeks following the onset of the injury or sickness, the Member is continuously unable to perform each and every duty of his or her Usual Occupation; and (ii) [a]fter the initial thirty-nine (39) week period, the Member is continuously unable to perform any occupation for which he or she is or may become qualified by reason of his or her education, training or experience.

Def.'s Mot. for Summ. J. ("Def.'s Mot."), Ex. A at 5-6. The plan also states that the claims administrator, VPA, will determine whether a member qualifies as totally disabled based on objective medical evidence. See id., Ex. A at 6. The plan defines objective medical evidence as "evidence establishing facts or conditions as perceived without distortion by personal feelings, prejudices or interpretations." Id. Payments made during the first thirty-nine weeks of total disability are commonly referred to as "short-term" disability benefits, and payments made any time after the initial thirty-nine week period of total

2

disability are "long-term" disability benefits.

On June 3, 1995, the plaintiff, then forty-three years old, suffered a massive heart attack while mountain biking. An angioplasty was performed to recanalize a totally occluded left anterior descending coronary artery. The angioplasty proved successful and the plaintiff was discharged from the hospital the next day. The plaintiff continued with cardiac medical and physical therapy over the following several weeks. One of the plaintiff's treating physicians was Dr. Thomas LaMattina. LaMattina projected that the plaintiff would be able to return to work in three months. Upon moving to New Hampshire, the plaintiff was referred to Dr. Alan Rosenfeld to continue his cardiac rehabilitation.

Following the heart attack, the plaintiff applied for disability benefits under the plan. VPA granted him short-term disability benefits for thirty-nine weeks pursuant to the plan. However, in early December 1995, VPA advised the plaintiff that he would not qualify for long-term disability benefits because, based on its review of his medical records submitted at the time, VPA believed that he could perform a less stressful or more sedentary occupation than his occupation as a learning products specialist. VPA encouraged the plaintiff to submit any additional medical information the plaintiff had to support his claim of total long-term disability.

3

VPA's administrative record upon which it based its determination about the plaintiff's eligibility for long-term disability benefits contained a variety of information. Rosenfeld, one of the plaintiff's treating physicians, assessed the plaintiff's condition on several occasions and documented his treatment in reports that became part of the record. On November 7, 1995, Rosenfeld completed an "Attending Physician's Statement of Disability" that proved important to VPA's ultimate decision. Rosenfeld stated that although the plaintiff was totally disabled from his job at HP, he was not totally disabled from any other work. See Def.'s Mot., Ex. C at 160. Furthermore, in a progress note dated November 15, 1995, Rosenfeld wrote, "I did point out to him that, based on his stress test, he does not have objective evidence of any significant physical impairment." Id., Ex. C at 123. On December 13, 1995, however, apparently with no additional medical data that might change his initial assessment, Rosenfeld opined in a letter in support of the plaintiff's claim for social security benefits that the plaintiff was totally disabled due to psychological stress, stating: "[a]lthough his physical abilities are not sufficiently impaired to prevent him from performing light work, the psychological stresses of his job are much more of a problem. . . . For these reasons, it is my opinion that Mr. Belcher should be considered totally disabled." Id., Ex. C at 135-37.

In February 1996, VPA assessed the plaintiff's long-term disability benefits application and told him that, based on the medical records they had received, no evidence indicated that his disability was severe enough to prevent him from performing all occupations for which he was qualified or could become qualified by reason of his education, training, or experience. On February 9, 1996, VPA preliminarily recommended denial of long-term disability benefits. VPA notified the plaintiff by formal letter on February 12, 1996, of its decision to deny him long-term disability benefits, explaining that the objective medical evidence in his file supported the conclusion that his condition did not preclude him from working at another occupation, and that the plan did not provide for benefits for the "prophylactic measure" of avoiding "psychological 'stress.'" Id., Ex. C at 116. The plaintiff appealed on February 14, 1996, and sent VPA a copy of a letter sent by Rosenfeld to the Social Security Administration ("SSA") in support of his claim for Social Security benefits on February 13, 1996. Rosenfeld's letter stated that, in his opinion, the plaintiff could not perform such jobs as library aide, proofreader, or title searcher because those occupations would be equally as stressful to the plaintiff as his job at HP and that the plaintiff should avoid such stress to decrease his risk of a future heart attack.

Consequently, VPA asked an independent cardiologist, Dr.

5

Robert Schatz, to review all of the plaintiff's medical records and to determine his functional level based on the objective cardiac findings. Upon review, Schatz determined that the plaintiff's cardiac condition limited him to sedentary and light activities, but stated that in his opinion the plaintiff was capable of some occupation less stressful than his former position, such as a library aide.

On March 6, 1996, the plaintiff contacted Marilyn Howard, a manager of the disability program at HP, to express his concern that VPA was having an outside doctor decide his case. During their twenty-three minute phone conversation the plaintiff alleges that Howard made several remarks which form the basis of his contention that VPA's decision was tainted by a conflict of interest.[2] While the plaintiff was expressing his concern that a non-treating physician who had not even spoken to him was evaluating his claim, Howard interrupted him, saying "stop just a minute, you are rushing to conclusions." Mem. of Law in Supp. of Pl.'s Mot. for Summ. J. and in Opp'n to Def.'s Mot. for Summ. J., Ex. A ("Belcher Aff."), ¶ 4. According to the plaintiff, Howard then

> went on to say that what is taking place is a "chart
> review" of my case and that it was common practice to
> have another doctor review my case. She told me that
> "we will not make a determination on your appeal based

---

[2]These remarks represent the only significant area of factual dispute between the parties.

6

on the chart review" and she assured me that they would not make a decision until more information was gathered on my case.  I felt reassured that I still had a chance to be awarded benefits so the conversation changed to small talk on how difficult it is to raise three teenagers (and avoid stress related chest pain), etc.  I was raping [sic] up the conversation and expressed an optimistic point of view that I may very well receive long term benefits when she abruptly said, "you will not be eligible to receive disability benefits."  Then I distinctly remembered her saying "Mr. Belcher, you are too young to receive benefits . . . . your talents and experience are very valuable to the company . . . ."  She then went on to say "you cannot continue to receive money and benefits from HP, after all the company wants to see some return on its investment."  She made it clear that she was involved in the decision making process.  She was complimenting me while telling me in an assertive way that I will not win the appeal.  At that point, we ended the conversation.

Id.

On April 26, 1996, an administrative law judge ("ALJ") issued a decision awarding the plaintiff Social Security disability benefits.  VPA requested from SSA the records it used in making its decision.  While waiting for the SSA records, VPA asked another independent cardiologist, Dr. Gerald M. Weingarten, to evaluate whether the ALJ's decision was supported by objective medical evidence.  Weingarten disagreed with both the ALJ's conclusions and with Rosenfeld's revised assessment that the plaintiff was totally disabled as being unsubstantiated by the medical records.  He opined that based on the objective medical evidence in the record the plaintiff was not disabled from his usual and customary employment.

The plaintiff is able to perform some tasks involving light

7

exertion. He walks about forty-five minutes a day, rakes leaves, and mows the lawn. He performs household tasks, such as cooking, vacuuming, and cleaning. He also photographs, gardens, and paints as hobbies. Furthermore, he leaves the house twice a day and is able to drive a car. However, he becomes fatigued and experiences chest pains performing some of these tasks.

On July 3, 1996, VPA formally notified the plaintiff of its decision to uphold the denial of long-term disability benefits and explained its reasons for doing so. In November 1996, VPA received the documents from SSA that it had requested in April. VPA asked Weingarten to review the record again to determine whether anything in the SSA documentation would warrant a reversal of VPA's decision. Weingarten concluded in a December 12, 1996, letter that his original opinion that the plaintiff was not totally disabled remained unaltered based on the additional documents from SSA.

On December 3, 1996, the plaintiff filed an amended complaint against the defendant alleging that its decision to deny him long-term disability benefits, made through VPA, was arbitrary and capricious in violation of ERISA Section 502(a)(1)(B).[3] Both parties have requested that summary judgment be entered in their favor.

---

[3]The plaintiff initially filed a petition for declaratory judgment on August 29, 1996, in New Hampshire Superior Court. On October 24, 1996, the case was removed to federal court.

8

The role of summary judgment is "to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." Snow v. Harnischfeger Corp., 12 F.3d 1154, 1157 (1st Cir. 1993) (quoting Wynne v. Tufts Univ. Sch. of Medicine, 976 F.2d 791, 794 (1st Cir. 1992)). The court may only grant a motion for summary judgment where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment bears the initial burden of establishing the lack of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Quintero de Quintero v. Aponte-Roque, 974 F.2d 226, 227-28 (1st Cir. 1992). The court must view the entire record in the light most favorable to the non-moving party, "'indulging all reasonable inferences in [its] favor.'" Mesnick v. General Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991) (quoting Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990)). However, once a party has submitted a properly supported motion for summary judgment, the non-moving party "may not rest upon mere allegation or denials of [its] pleading, but must set forth specific facts showing that there is a genuine

9

issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986) (citing Fed. R. Civ. P. 56 (e)). In this case, the parties contest few of the facts underlying their dispute. They disagree primarily about the characterization of the facts and the ultimate legal conclusion of whether the defendant's decision was arbitrary and capricious in violation of ERISA, an issue that the court may properly determine as a matter of law.

As discussed more fully infra, the defendant has submitted a properly supported motion for summary judgment by pointing to evidence in the record that supports the conclusion that the plaintiff was not totally disabled within the meaning of the plan. Thus, after setting forth the standard of review applicable to this case, the court will evaluate the parties' claims to ascertain whether the plaintiff has introduced a genuine issue of material fact requiring a trial on the merits.

I.    Standard of Review

When a denial of ERISA plan benefits is challenged under 29 U.S.C. § 1132(a)(1)(B), the denial "is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). Where an ERISA plan grants discretionary authority to an administrator, the

court must employ a more deferential "arbitrary and capricious" standard of review. See id.; Recupero v. New Eng. Tel. & Tel. Co., 118 F.3d 820, 836 (1st Cir. 1997); Rodriquez-Abreu v. Chase Manhattan Bank, 986 F.2d 580, 583 (1st Cir. 1993); Curtis v. Noel, 877 F.2d 159, 161 (1st Cir. 1989); see also Bellino v. Schlumberger Techs., Inc., 944 F.2d 26, 29 (1st Cir. 1991). When a court reviews a decision to determine whether it was arbitrary and capricious, it does not consider whether it would have reached a different conclusion but instead whether the decision had a rational basis in the record. See Mitchell v. Eastman Kodak Co., 113 F.3d 433, 439 (3d Cir. 1997); Diaz v. Seafarers Int'l Union, 13 F.3d 454, 458 (1st Cir. 1994); Exbom v. Cent. States, SE. & SW. Areas Health & Welfare Fund, 900 F.2d 1138, 1142-43 (7th Cir. 1990). As the Exbom court presented the issue:

> The arbitrary and capricious standard holds that [an administrator's] decision shall not be overturned on a § 1132(a)(1)(B) matter, absent special circumstances such as fraud or bad faith, if it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome. A court will not set aside the denial of a claim if the denial is based on a reasonable interpretation of the relevant plan documents. Nor will it do so where the [administrator] has based its decision on a consideration of the relevant factors that encompass the important aspects of the problem before it. If the [administrator] makes an informed judgment and articulates an explanation for it that is satisfactory in light of the relevant facts, i.e., one that makes a "rational connection" between the issue to be decided, the evidence in the case, the text under consideration, and the conclusion reached, then the [administrator's] decision is final.

900 F.2d at 1142-43 (quotation marks and citations omitted).

11

The plan in this case provides:

> The [Hewlett-Packard Company Employee Benefits]
> Organization is the named fiduciary which has the
> discretionary authority to act with respect to any
> appeal from a denial of benefits.  The Organization's
> discretionary authority includes the authority to
> determine eligibility for benefits and to construe the
> terms of the Plan.  The Claims Administrator [VPA]
> shall administer the review of denied claims on the
> Organization's behalf and make the decision on review.

Def.'s Mot., Ex. A. at 28; see also Lev Decl., ¶ 6.  Therefore, because the plan expressly grants the defendant discretionary authority in making the benefits determination, the court applies the arbitrary and capricious standard of review to determine whether the defendant made an informed judgment properly denying the plaintiff long-term disability benefits.

Where a plan administrator who has been granted discretion has a conflict of interest, however, the court adjusts its arbitrary and capricious review to account for the conflict of interest.  See Schuyler v. Protective Life Ins. Co., No. 92-192-M, slip op. at 9 (D.N.H. Dec. 20, 1994) (citing Firestone, 489 U.S. at 115).  The plaintiff claims in this case the defendant had a conflict of interest, as evidenced by the plaintiff's conversation with Howard.[4]  Although the plaintiff alleges that

---

[4]The plaintiff also claims that there was a conflict of interest because the defendant's benefits decision would affect its financial condition.  This contention is without merit.  VPA made the final determination on behalf of the defendant and the undisputed record demonstrates that VPA is an independently contracted entity.  VPA is paid a flat fee for its services and stands in no way to gain or lose from a denial of benefits, as

12

Howard exerted an improper influence over what should have been an independent determination by VPA, the plaintiff's conversation establishes only that Howard felt she either knew or could influence VPA's decision, not that she actually influenced the decision. Nevertheless, the possibility of such improper influence persuades the court that the potential for a conflict of interest in the benefits determination existed. Therefore, the court will adjust its arbitrary and capricious review by conducting a more searching inquiry than would otherwise be appropriate to determine whether there is any evidence that Howard or any other employee of the defendant improperly influenced VPA's decision to deny the plaintiff long-term disability benefits.

The plaintiff also challenges the defendant's interpretation of certain plan language. As noted above, the plan also gives plan administrators discretion to interpret the terms of the plan. Where equally plausible interpretations of plan language exist and the plan grants the administrator the power to interpret its terms, the court will accept the administrator's interpretation of ambiguous terms as long as that interpretation is reasonable. See, e.g., Diaz, 13 F.3d at 458. The First

the benefits are paid from a trust financed by HP, not from VPA's assets. See Lev Aff. ¶ 5; cf. Schuyler, No. 92-192-M, slip op. at 9 (insurance company's fiduciary role to pay beneficiaries from its own assets in perpetual conflict with its profit-making role as business).

13

Circuit has stated

> where both the trustees of a pension fund and a
> rejected applicant offer rational, though conflicting,
> interpretations of plan provisions, the trustees'
> interpretation must be allowed to control.

Jestings v. New England Tel. & Tel. Co., 757 F.2d 8, 9 (1st Cir. 1985) (quotation marks and citations omitted). Therefore, the plaintiff's argument that any ambiguity in the plan language must be resolved in his favor is without merit, and the court reviews the defendant's interpretation of plan language only to determine if it was rational.

## II. Review of the Denial of Benefits

The court now analyzes seriatim the plaintiff's arguments that (1) the defendant improperly interpreted the language of the plan; (2) the defendant's determination that he was not totally physically disabled was an arbitrary and capricious conclusion based on the evidence before it; and (3) the defendant abused its discretion by concluding that the plaintiff was qualified for and capable of employment.

### A. The Language of the Plan

The plaintiff asserts that the defendant's denial of benefits violates the plain language of the plan. He claims that the defendant acted arbitrarily and capriciously when it: (1) interpreted the phrase "objective medical evidence;" (2)

14

interpreted the plan to require that the decision at thirty-nine weeks regarding long-term disability benefits be made without consideration of the plaintiff's future medical condition; and (3) improperly considered his complaints of stress as falling outside the plan's definition of disability.

The plan defines objective medical evidence as "evidence establishing facts or conditions as perceived without distortion by personal feelings, prejudices or interpretations." Def.'s Mot., Ex. A at 6. The defendant interpreted the definition to bar consideration of the plaintiff's subjective complaints of pain, fatigability, and dizziness. The plaintiff argues that (1) the definition of the term "objective medical evidence" is ambiguous; and (2) the defendant's interpretation was improper. The court reviews the defendant's interpretation of ambiguous plan language only to determine if it was reasonable. See Diaz, 13 F.3d at 458. Here, the defendant's interpretation of the plan language as barring consideration of the plaintiff's subjective reports of disabling symptoms was reasonable. The defendant considered the objective medical manifestations of the plaintiff's subjective symptoms and that was all it was required to do.

The plaintiff next contends that the defendant impermissibly limited its inquiry by considering only his condition at thirty-nine weeks, rather than taking into account difficulties he might

have in the future because of his heart attack. Under the plan, a determination of long-term total disability is made when, "[a]fter the initial thirty-nine week period, the Member is continuously unable to perform any occupation for which he or she is or may become qualified by reason of his or her education, training or experience." Def.'s Mot., Ex. A at 5-6. Contrary to the plaintiff's assertion, the plain meaning of the plan only requires the defendant to determine whether the plaintiff is able to continuously perform an occupation for which he is or may become qualified at thirty-nine weeks. It does not require that the defendant engage in any extrapolation of his present medical condition or any prognostication as to his future ability to work. Thus, the defendant did not violate the plan's plain meaning by making a decision based on the plaintiff's condition at the thirty-nine week mark without taking into account the possibility that his condition might worsen in the future.

Finally, the plaintiff contends that the defendant improperly considered his complaints of stress in two ways. First, the plaintiff argues that the defendant mischaracterized some of the plaintiff's symptoms as possibly relating to a mental illness rather than a physical disability. However, the plaintiff appears to misapprehend the defendant's communications to the plaintiff. The defendant's communications merely appraise the plaintiff that it would not consider his psychological stress

16

in its determination of whether he had a total physical disability. The defendant informed the plaintiff that in order for his complaints of psychological stress to play a part in its determination of whether or not he was disabled, he would have to seek a mental illness disability. The plaintiff declined to do so and has resisted any suggestion that he might pursue such an option. Given the uncontroverted evidence that the plaintiff experiences considerable psychological stress over his health, it was permissible and pertinent for the defendant to advise the plaintiff that such stress does not alone entitle him to benefits for a physical disability.

The plaintiff further argues that the defendant failed to give proper consideration to the effect of stress on him and the necessity for him to take prophylactic measures to avoid stress. The plaintiff asserts that his ability to deal with stress has been impaired by his physical condition, and that it is medically necessary for him to avoid stress in order to preserve his health. He contends that the defendant has mischaracterized and discounted objective medical evidence suggesting that he is susceptible to and must avoid stress. He further argues that to do so was arbitrary and capricious.

This argument is undercut by the inconsistency in the opinions of the plaintiff's treating physician. Rosenfeld initially opined that the plaintiff "does not have objective

17

evidence of any significant physical impairment" and was physically capable of working despite demonstrating "psychological stresses" at the thought of going back to work. Id., Ex. C at 123. Later, however, based on essentially the same facts and without offering an explanation as to what factors might have changed his assessment, Rosenfeld opined that the plaintiff should avoid the stress that would be associated with a return to work at any position for which he might be qualified, rendering him totally disabled. Because Rosenfeld did not offer and the record does not make clear an explanation for these two conflicting assessments of the medical necessity that the plaintiff avoid psychological stress, the defendant could have rationally chosen either view of this evidence. On this record, the fact that it chose a view unfavorable to the plaintiff's position does not render its decision arbitrary and capricious.

B.    Evaluation of the Evidence of the Plaintiff's Physical Condition

The defendant argues that it is entitled to summary judgment on the plaintiff's claim because its decision to deny him long-term disability benefits was based on objective medical evidence indicating that he was physically capable of holding a position involving sedentary work. The plaintiff asserts that he is totally disabled within the meaning of the plan and that the defendant's denial of long-term disability benefits is arbitrary

18

and capricious because, <u>inter alia</u>, (1) the objective medical evidence supports the conclusion that he is "totally disabled;" (2) the defendant's decision was made prior to receiving all of the relevant information, including the SSA determination; and (3) the defendant improperly relied on the opinion of non-treating physicians.[5]

The parties disagree about the conclusions to be drawn from the medical evidence in the record. The plaintiff's arguments, however, misapprehend the proper inquiry in two respects. First, the plaintiff's arguments conflate the existence of objective medical evidence that he suffered a heart attack with objective medical evidence that he continues to be physically disabled. The plaintiff correctly notes the existence of undisputed and unequivocal evidence that he suffered a massive and debilitating heart attack. For the purposes of the court's review, however, that evidence is relevant only to the extent that it sheds light on his medical condition thirty-nine weeks later.

_____

[5]The plaintiff also argues as a threshold matter that the defendant's initial February 12, 1996, decision was arbitrary and capricious. This argument is misplaced. The plaintiff was afforded and took advantage of the opportunity to challenge the reasonableness of the defendant's initial decision through the appeal process established by the plan. The court will not revisit issues adequately addressed in the appeals process. The court's proper focus is on the July 3, 1996, appeals decision, which the court understands to be the final decision of the defendant. <u>See, e.g.</u>, <u>Exbom</u>, 900 F.2d at 1142-43. It considers the prior decision only to the extent it forms the basis for the July 3, 1996, decision.

The plaintiff's second misconception concerns the status of the contradictory evidence of his physical condition at the time he was denied benefits. The plaintiff's argument that objective medical evidence supports the conclusion that he was disabled fails to take into account the court's limited role in reviewing the denial of benefits. The mere existence of objective medical evidence to support the plaintiff's position does not mean that the defendant was arbitrary and capricious in its decision to deny him benefits. It is not the court's role to weigh which view of the plaintiff's medical condition had more objective medical evidence to support it, but rather to determine whether some reasonable basis existed in the medical evidence to support the defendant's decision to deny the plaintiff long-term disability benefits. See Diaz, 13 F.3d at 458; Exbom, 900 F.2d at 1142-43.

The plaintiff next argues that the defendant acted arbitrarily and capriciously by upholding its determination to deny him long-term disability benefits because it failed to consider or give proper weight to the SSA decision. This argument fails because the defendant was not required to give any consideration to the SSA decision. The plan's summary description explicitly states that the determination of Social Security benefits by SSA is a completely independent process made under a different standard from its own benefits determination

20

under the plan.  See Def.'s Mot., Ex. B at 114.  Although the defendant made its final decision without the SSA records after telling the plaintiff that it would first wait to receive those records, under the terms of the plan, the defendant had no legal duty to request Social Security records or to evaluate them in its own analysis.  See id., Ex. A at 26 ("The Member shall be solely responsible for submitting the claim form and any other information or evidence on which the Member intends the Claims Administrator to consider in order to render a decision on the claim."); see also Madden v. ITT Long Term Disability Plan, 914 F.2d 1279, 1285 (9th Cir. 1990) (administrator's decision relying on medical reports, educational background, and work experience without considering plaintiff's social security award not arbitrary and capricious).  SSA awarded the plaintiff benefits in April.  The defendant waited until July to make its determination.  The SSA records did not arrive until November.  The defendant appears to have been doing no more than giving the plaintiff every opportunity to construct the best case he had for entitlement to benefits.  It was not required to continue to wait indefinitely; it did not act arbitrarily and capriciously by failing to withhold its decision when it had no duty to consider the SSA records.[6]

_____

    [6]The plaintiff's contention that the defendant's consideration
of Weingarten's December 12 opinion was arbitrary and capricious
is inapposite.  Because Weingarten's December 12 opinion did not

The plaintiff also argues that the defendant improperly relied on the opinions of non-treating physicians. On the state of the medical record in this case, this argument is misplaced. As discussed supra, Rosenfeld, the plaintiff's treating physician, revised his initial opinion that the plaintiff was not totally disabled to conclude that he was totally disabled with no explanation for the change of his opinion. Given the apparent contradiction, it was proper for the defendant to seek out the opinion of non-treating physicians to assist the defendant in choosing between the two versions of the evidence as presented by Rosenfeld. Under the circumstances, it was of little moment that these physicians did not examine or speak with the plaintiff.

The record contained a significant amount of objective medical information to support the conclusion that the plaintiff's physical limitations were not completely debilitating. The defendant's determination that the plaintiff lacked a "total disability" under the terms of the plan was based upon statements of the plaintiff's treating physician, the plaintiff's own account of his daily activities, and the opinions of independent non-treating cardiologists. The plaintiff's treating physician opined at one point that the plaintiff is

_____

change his initial assessment, the defendant's consideration of the December 12 opinion did not alter the outcome of this case and thus would not justify reversal of the decision even if it were improper.

22

capable of "sedentary to light work." See, e.g., Def.'s Mot., Ex. C at 159. Even though Dr. Rosenfeld, subsequent to his opinion that the plaintiff suffered no significant physical impairment, later opined that the plaintiff was totally disabled based on the "psychological stresses of his job," he did so while noting that the plaintiff's "physical abilities are not sufficiently impaired to prevent him from performing light work." Id., Ex. C at 135-37. The two independent cardiologists opined that the plaintiff was physically capable of his usual employment as a technical writer and marketing manager.

The plaintiff, moreover, engages in a range of physical activity. He walks about forty-five minutes a day, rakes leaves, and mows the lawn. He performs household tasks, such as cooking, vacuuming, and cleaning. He leaves the house twice a day, drives a car, and engages in hobbies such as photography, gardening, and painting. Based on all these facts, it was not arbitrary and capricious for the defendant to conclude that the plaintiff retained an ability to perform light or sedentary work. Nor does a more searching review to account for any conflict of interest of the defendant reveal any cause to reevaluate this conclusion. Although it is true that evidence in the record supports the positions of both the plaintiff and the defendant, the record does not indicate that the defendant acted irrationally or with an improper motive in reaching its determination.

C. The Plaintiff's Ability to Perform Other Work

The plaintiff finally claims that the defendant was arbitrary and capricious in its determination that he was capable of holding positions other than his former employment. He asserts that the defendant acted without a rational basis for its actions when it did or failed to do the following: (1) determined that his experience and training qualified him or allowed him to become qualified for positions such as a library aide or proofreader; (2) failed to consult a vocational expert; and (3) failed to take into account the dignity of the positions which it asserted he could perform.

The plaintiff's argument that the record does not support the conclusion that he is capable of performing occupations other than his former position at HP suffers from the same shortcomings as his argument that he is physically debilitated. Despite some evidence in the record that might support the conclusion that the plaintiff was not capable of performing any occupation for which he is or could become qualified, substantial evidence in the record supports the defendant's conclusion that the plaintiff is able to perform other occupations. As discussed supra, the defendant could permissibly conclude that the plaintiff is capable of light or sedentary work. In addition, the plaintiff's background and training support the conclusion that he could perform or be trained for a variety of positions. The plaintiff

24

holds a master's degree from Harvard University, a bachelor of science degree from Suffolk University, and a diploma in computer electronics from Sylvania Technical School. He has had over eighteen years of professional experience as a principal education specialist at Digital Equipment Corporation, a service program marketing manager at Data General, a marketing specialist at DRI/McGraw Hill, and a learning products specialist at HP. See Belcher Aff. ¶ 2. This evidence provides a rational basis from which the defendant could have concluded that the plaintiff was capable of performing some occupation other than his usual one.

The plaintiff next asserts that the defendant's decision to deny him long-term disability benefits was arbitrary and capricious because the defendant failed to consult a vocational expert to evaluate his occupational capabilities. Courts have come to different conclusions as to whether a plan administrator is required to obtain vocational evidence before making a final determination of disability. Compare Duhon v. Texaco, Inc., 15 F.3d 1302, 1308-09 (5th Cir. 1994) (holding plan administrator may determine disability without vocational testimony given permissive plan language and medical evidence); McKenzie v. General Tel. Co., 41 F.3d 1310, 1317 (9th Cir. 1994) (same); and Block v. Pitney Bowes, Inc., 952 F.2d 1450, 1455 (D.C. Cir. 1992) (same); with Gunderson v. W.R. Grace & Co. Long Term Disability

25

Income Plan, 874 F.2d 496, 499 (8th Cir. 1989) (holding plan administrator should have obtained vocational expert's opinion to determine plaintiff's capability to perform "any occupation.").

The court rejects the plaintiff's contention that any benefits-eligibility decision without reference to vocational evidence is arbitrary and capricious. Under the circumstances of this case, where the plaintiff had only exertional limitations, had a treating physician who opined that he was capable of performing light and sedentary duties in a low-stress environment, admitted that he performed a variety of activities around the home, and bore the responsibility under the plan of submitting to the defendant the information which supported his position, no vocational expert was required for the defendant to rationally conclude that the plaintiff was not totally disabled from other work within the meaning of the plan. See McKenzie, 41 F.3d at 1317; Duhon, 15 F.3d at 1308-09; Block, 952 F.2d at 1455. Therefore, given that substantial evidence in the administrative record supports the defendant's position, it did not act arbitrarily and capriciously by not consulting a vocational expert.

Finally, the plaintiff urges that the court read into the meaning of the phrase "other work" a requirement that the plaintiff be not merely able to perform any job, but rather a job that would enable him to earn a dignified living comparable to

26

that of his former position and that realistically would be obtainable. The plaintiff's argument that he is only required to establish "a physical inability to [pursue] any occupation from which he could earn a reasonably substantial income rising to the dignity of an income or livelihood," Helms v. Monsanto Co., 728 F.2d 1416 (11th Cir. 1984), is misplaced. Although this contention is not wholly without merit, the court's role is not to make an independent assessment of the dignity and availability of various occupations, but to review the defendant's determination for evidence of arbitrariness or caprice. On the record before it, the defendant could rationally have concluded that the plaintiff was qualified for positions such as a teacher or proofreader, that they were available to him if he sought them, and that they could have provided him with a profession of similar dignity to his former position.

D. Conclusion

The defendant has submitted a properly supported motion for summary judgment alleging that its decision to deny long-term disability benefits to the plaintiff was not arbitrary and capricious because it was based on objective medical evidence established in the record. This shifts the burden to the plaintiff to demonstrate that a genuine issue of material fact remains for trial on the issue of whether the defendant's

27

determination was arbitrary and capricious, or in other words, whether it lacked a rational basis in the record. However, ample evidence in the record supported the defendant's conclusion that the plaintiff was not entitled to long-term disability benefits. Therefore, even though a reasonable fact finder might have reached a different conclusion than the defendant based upon the same information, no reasonable fact finder could conclude that the defendant acted in an arbitrary and capricious manner when it declined to extend the plaintiff long-term disability benefits. This conclusion is not undermined even after taking into account and adjusting for the fact that the defendant may have had a conflict of interest, because the record does not indicate that the defendant reached an irrational conclusion or acted on the basis of an improper motive. The plaintiff has failed to demonstrate that there is a genuine issue of material fact requiring a trial, so summary judgment for the defendant is appropriate.[7]

### Conclusion

For the foregoing reasons, the defendant's motion for summary judgment (document no. 19) is granted and the plaintiff's motion for summary judgment (document no. 25) is denied. The

---

[7]Because the court has determined that the defendant is entitled to summary judgment on the plaintiff's claims, a fortiori summary judgment must be denied to the plaintiff.

28

defendant's motion to strike the plaintiff's jury demand (document no. 31) is denied as moot.  The clerk is ordered to close the case.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
District Judge

December 23, 1997

cc:  Paul M. DeCarolis, Esquire
     Robert R. Lucic, Esquire
     Jopseph P. Busch III, Esquire

29